# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

## NO. 10-2931

---

### UNITED STATES OF AMERICA,
**Appellee**

**v.**

### JERMEL LEWIS
**Appellant**

---

## BRIEF AND APPENDIX FOR APPELLANT JERMEL LEWIS

---

Appeals from Judgment in a Criminal Case dated June 28, 2010 in the
United States District Court for the Eastern District of Pennsylvania,
at Criminal No. 08-161 by the Honorable Curtis J. Joyner

---

**PAUL J. HETZNECKER, ESQUIRE**
**1420 WALNUT STREET, SUITE 911**
**PHILADELPHIA, PA 19102**
**(215) 893-9640**
**ATTORNEY FOR APPELLANT**

# TABLE OF CONTENTS

**PAGE**

Table of Citations------------------------------------------------------------  ii-vii

Statement of Subject Matter and Appellate Jurisdiction---------------  viii

Standard of Review------------------------------------------------------------  viii

Statement of Related Cases and Proceedings-------------------------------  ix

Statement of the Issues-------------------------------------------------------  x

Preservation of Issues--------------------------------------------------------  xi

Statement of the Case---------------------------------------------------------  1-9

Summary of Argument---------------------------------------------------------  10-11

Argument------------------------------------------------------------------------  12-37

Conclusion-----------------------------------------------------------------------  38

Combined Certifications -----------------------------------------------------  39

Certificate of Service----------------------------------------------------------  40

# TABLE OF CITATIONS

**PAGE**

## CASES CITED

Foster v. California,
        394 U.S. 440, 89 S. Ct. 1127, 22 L.Ed.2d 402 (1969)--------  20

Government of the Virgin Islands v. Pinney,
        967 F.2d 912 (3rd Cir. 1992)-------------------------------------  28

Huddleston v. United States,
        485 U.S. 681, 108 S. Ct. 1496, 99 L.Ed 2nd 771 (1998)------  25, 33

Jund v. Town of Hempstead,
        941 F.2d 1271, 1285 (2nd Cir. 1991)-----------------------------  33, 35

Manson v. Brathwaite,
        432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed 2d 140 (1977)---------  12-13

Neil v. Biggers,
        409 U.S. 188, 93 S.Ct. 375, 34 L.Ed 2d 401 (1972)----------  16-19

United States v. Adam,
        534 F.2d 31 (3rd Cir. 1996)---------------------------------------  27

United States v. Beparias,
        805 F.2d 1447 (11th Cir. 1986), cert. denied,
        482 U.S. 916 (1987)-------------------------------------------------  35

United States v. Blyden,
        964 F. 2d 1375 (3rd Cir. 1992)------------------------------------  25

United States v. Brady,
        26 F.3d 282 (2nd Cir.1994)----------------------------------------  28

United States v. Brownlee,
     454 F.2d 131 (3rd Cir. 2006)------------------------------------- 14

United States v. Buffey,
     899 F.2d 1402, 1406 (4th Cir. 1990)----------------------------- 34

United States v. Butch,
     256 F.3d 171 (3rd Cir. 2001)------------------------------------- 25

United States v. Clark,
     651 F. Supp. 71 (M.D. Pa. 1986)------------------------------- 21

United States v. Clausen,
     328 F.3d 708,711 (3rd Cir. 2003)----------------------------- 32

United States v. Collins,
     40 F.3d 95, 100 (5th Cir. 1994)-------------------------------- 34, 37

United States v. Cross,
     308 F.3d 308 (3rd Cir. 2002)------------------------------------ 25, 27

United States v. Driggs,
     823 F.2d 52 (3rd Cir. 1987)------------------------------------- 27

United States v. Echeverri,
     854 F.2d 638 (3rd Cir. 1998)------------------------------------ 25, 28

United States v. Emaneule,
     51 F.3d 1123 (3rd Cir. 1995)------------------------------------ 13-14

United States v. Farrell,
     877 F.2d 870 (11th Cir.), cert. denied 493 U.S. 922,
     110 S. Ct. 289 (1989)---------------------------------------- 35

United States v. Gibbs,
     190 F.3d 188 (3rd Cir. 1999)----------------------------------- 25

United States v. Givan,
    320 F. 3d 452 (3rd Cir. 2003)---------------------------------    viii, 12

United States v. Green,
    617 F.3d 233 (3rd Cir. 2010)---------------------------------    29

United States v. Harrison,
    986 F. Supp. 280 (M.D. Pa. 1997)---------------------------    21

United States v. Haywood,
    363 F.3d 200, 210 (3rd Cir. 2004)-----------------------------    32-33

United States v. Hernandez,
    975 F.2d 1035 (4th Cir. 1992)---------------------------------    27

United States v. Himelwright,
    43 F.3d 777 (3rd Cir.1994)---------------------------------------    26

United States v. Jemal,
    26 F.3d 1267 (3rd Cir. 1994)-----------------------------------    25-26

United States v. Jimenez-Torres,
    435 F.3d 3, 8 (1st Cir. 2006)-----------------------------------    33

United States v. Kiendra,
    663 F.2d 349 (1st Cir. 1981)-----------------------------------    27

United States v. Lynch,
    282 F.3d 1049, 1054 (9th Cir. 2002)----------------------------    33

United States v. Mattson,
    671 F.2d 1020, 1025 (7th Cir. 1982)----------------------------    34

United States v. Merolla,
    523 F.2d 51 (2nd Cir. 1975)-------------------------------------    34

United States v. Morley,
    199 F.3d 129 (3rd Cir. 1999)-----------------------------------    25

United States v. Murphy, 7
        68 F.2d 1518 (7th Cir. 1985), cert. denied 475 U.S. 1012------ 35

United States v. Murray,
        103 F.3d 310 (3rd Cir. 1997)-------------------------------- 29

United States v. Parks,
        497 F.3d 220 (2nd Cir. 2007)--------------------------------  35

United States v. Paul,
        614 F.2d 115 (6th Cir. 1980)---------------------------------  21

United States v. Peterson,
        263 F.3d 848 (7th Cir. 2001)--------------------------------  35

United States v. Rodriguez-Casiano,
        425 F.3d 12, 13 (1st Cir. 2005)-----------------------------  33

United States v. Sampson,
        980 F.2d 883 (3rd Cir. 1992)--------------------------------  26, 28

United States v. Scarfo,
        850 F.2d 1015 (3rd Cir. 1988)--------------------------------  29

United States v. Solomon,
        W.L. 2702792 (W.D. Pa.  2007)---------------------------------  22

United States v. Sriyuth,
        98 F.3d 739 (3rd Cir. 1996)---------------------------------  24, 29

United States v. Universal Rehabilitation Services (PA),
        205 F.3d 657 (3rd Cir. 2000) (en banc)-------------------------  26

United States v. Urban,
        404 F.3d 754 (3rd Cir. 2005)--------------------------------  32

United States v. Voigt,
     89 F.3d 1054 (3rd Cir. 1996)----------------------------------- 32

United States v. Von  Poyck,
     77 F.3d 285 (9th Cir.  1996)------------------------------------ 22

United States v. Wang,
     222 F.3d 234 (6th Cir. 2000)------------------------------------ 33

United States v. Williams,
     342 F.3d 350 (4th Cir. 2003)------------------------------------ 35

United States v. Wong,
     703 F.2d 65 (3rd Cir. 1983)--------------------------------------- 27

## RULES CITED

Federal Rule of Appellate Procedure  32(a)(7)(b)-------------------- 39

Federal Rule of Evidence 403-------------------------------------- vi,  viii,  ix, 11, 23-30

Federal Rule of Evidence 404(b)-------------------------------------- 24-28

Federal Rules of Appellate Procedure 4(b)-------------------------- viii

## <u>STATUTES CITED</u>

18 U.S.C. § 1321------------------------------------------------------- viii

18 U.S.C. §1512(b)(1)-------------------------------------------------- 1

18 U.S.C. §1951(a)----------------------------------------------------- 1, 32, 34

18 U.S.C. §924(c)------------------------------------------------------ i, xi

28 U.S.C. § 1219, 3742----------------------------------------------- viii

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The original jurisdiction of the District Court was based upon 18 U.S.C. §

1321 which provides for the exercise of original jurisdiction by the District Court

in all matters involving offenses against the laws of the United States.

The appellate jurisdiction of this Court is based on 28 U.S.C. § 1219, 3742

and Rule 4(b) of the Federal Rules of Appellate Procedure.

## STANDARD OF REVIEW

The appellate review of a District Court's denial of a motion to suppress is

clear error regarding the underlying facts, but exercises plenary review as to the

legality of the lower court's decision in light of the court's properly established

facts.  United States v. Givan, 320 F. 3d 452 (3rd Cir. 2003).

A challenge to a trial court's decision to admit evidence pursuant to

Federal Rule of Evidence 404(b) and 403 is reviewed for abuse of discretion.

Where there is a challenge to the sufficiency of the evidence, the evidence

is viewed in a light most favorable to the government, and the verdict will be

sustained if any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Mr. Lewis was tried with co-defendants, Glorious Shavers and Andrew White on the same superseding indictment.  Counsel is not aware of any other cases related to this appeal.

## STATEMENT OF THE ISSUES

I.    WHETHER THE DISTRICT COURT COMMITTED AN ABUSE OF DISCRETION BY DENYING APPELLANT'S PRE-TRIAL MOTIONS?

    A.    WHETHER THE DISTRICT COURT ERRED IN DENYING THE DEFENSE MOTION TO SUPPRESS, THAT IS BOTH THE OUT OF COURT AND IN-COURT IDENTIFICATIONS BY WITNESSES ALBERTO VASQUEZ AND BRIAN ANDERSON?

    B.    WHETHER THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE TELEPHONE CONVERSATIONS RECORDED FROM THE PRISON?

II.   WHETHER THE DISTRICT COURT ERRED IN PERMITTING THE GOVERNMENT TO INTRODUCE OTHER CRIMES EVIDENCED PURSUANT TO 404(B) AND 403 SPECIFICALLY THAT APPELLANT AND HIS CO-CONSPIRATORS WERE INVOLVED IN THE UNCHARGED ARMED ROBBERY OF A POST OFFICE?

III.  WHETHER THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN A CONVICTION UNDER THE HOBBS ACT WHERE THERE IS AN INSUFFICIENT NEXUS BETWEEN THE ROBBERY AND INTERSTATE COMMERCE?

## <u>PRESERVATION OF ISSUES</u>

**Pursuant to this Honorable Court's Order, Appellant preserves the following issues for appeal fully relying on the arguments set forth in the briefs submitted by co-counsel.**

**IV.    WHETHER THE DISTRICT COURT ERRED IN OVERRULING THE APPELLANT'S JOINT MOTION FOR MISTRIAL AFTER THE GOVERNMENT WITNESS BLURTED OUT THAT THE CO-DEFENDANT WAS KNOWN AS A KILLER.**

[APPELLANT RESTS UPON THE ARGUMENTS PRESENTED BY CO-DEFENDANT, GLORIOUS SHAVERS' BRIEF ON THIS ISSUE AND PRESERVES IT FOR ARGUMENT ].

**V.    WHETHER THE EIGHT-YEAR TERM OF SUPERVISED RELEASE IMPOSED ON THE 18 U.S.C. §924(c) COUNT EXCEED THE STATUTORY MINIMUM?**

[APPELLANT RESTS UPON THE ARGUMENTS PRESENTED BY CO-DEFENDANT, GLORIOUS SHAVERS' BRIEF ON THIS ISSUE AND PRESERVES IT FOR ARGUMENT ].

**VI.    WHETHER A SEVEN-YEAR CONSECUTIVE MANDATORY-MINIMUM SENTENCE BE IMPOSED UNDER 18 U.S.C. §924(c)(1)(A)(ii) WHEN THERE IS NO FINDING BY A JURY ON PROOF BEYOND A REASONABLE DOUBT THAT ANY FIREARM WAS BRANDISHED?**

[APPELLANT RESTS UPON THE ARGUMENTS PRESENTED BY CO-DEFENDANT, GLORIOUS SHAVERS' BRIEF ON THIS ISSUE AND PRESERVES IT FOR ARGUMENT ].

## STATEMENT OF THE CASE

### Procedural History

On July 10, 2008, a superseding indictment added Jermel Lewis as a co-defendant along with Glorious Shavers and Andrew White.  The superseding indictment set forth additional counts against each of the defendants, charging them with an attempt to intimidate, threaten and/or corruptly persuade a witness in an "official proceeding" in violation of 18 U.S.C. §1512(b)(1).  (App. 33 at docket entry 40, 60-64)

On August 20, 2009, a federal grand jury returned a ten count Second Superseding Indictment charging Glorious Shavers, Andrew White and Jermel Lewis with conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. §1951(a), (Count One); conspiracy to interfere with interstate commerce by robbery by aiding and abetting in violation of 18 U.S.C. §§1951(a) and 2, (Count Two); use and carrying of a firearm during a crime of violence and aiding and abetting in violation of 18 U.S.C. §§924(c) and 2, (Count Three); and attempted witness tampering, in violation of 18 U.S.C. §1512(b)(1), (Counts Four through Ten).  (App. 42 at docket entry 148; 66-80)

The case was assigned to the Honorable J. Curtis Joyner, Jr. and on December 22, 2008 a hearing commenced on various pretrial motions filed by

the government as well as all three defendants.  The hearings on those motions were continued to June 17th and 18th of 2009.  (App. 37 at docket entry 86, 40 at docket entry 125, 111-237, 307-762)

On September 9, 2009, Appellant, along with his co-defendants, proceeded to trial before the Honorable J. Curtis Joyner, Jr. and a jury.  On September 16, 2009 Appellant was convicted of Counts One through Four. Appellant was acquitted of all the counts related to witness tampering.  On June 22, 2010 Appellant was sentenced to 141 months incarceration (Counts 1 and 2, 57 months – concurrent and Count 3, 85 months – consecutive). (App. 11-16)  A timely notice of appeal was filed on Appellant's behalf. (App. 9-10, 48 at docket entry 239)) Pursuant to an Order by the Third Circuit, this appeal is consolidated with the co-defendants, Glorious Shavers (No. 10-2790) and Andrew White (10-2971).

## Factual Background

Appellant was charged with a violation of the Hobbs Act, specifically, the robbery of a speakeasy that occurred on November 8, 2005.  A summary of the evidence below references both the testimony presented by several of the witnesses at trial, as well as during the motion to suppress.

The government's first witness was Brian Anderson.  Mr. Anderson, a
drug dealer, testified that in the early morning hours of November 8, 2005, he
arrived at a neighborhood speakeasy located in a private residence at 3060 North
8th Street, Philadelphia, Pennsylvania.  Mr. Anderson stated that he had some
drinks in the basement and then eventually moved to the first floor after the
speakeasy closed.  (App. 863-874).  Shortly thereafter, three armed gunman
wearing hoodies, entered the residence and ordered everybody down on the
ground.  Mr. Anderson provided a description of all three defendants and stated
he was eventually able to see the face of one of the assailants as his scarf was
pulled away from his face.  (App. 876-878).  The three assailants took property
from several individuals and then escorted all of the occupants to the basement.
Eventually police arrived and shortly after their arrival, Mr. Anderson identified
two of the three individuals involved as they were brought back in police
custody.  Mr. Anderson testified that he identified those two individuals as co-
defendants, Glorious Shavers and Andrew White. (App. 882-890).

More than two years after the robbery, while incarcerated in the
Philadelphia County Prison System on a drug charge, Mr. Anderson was visited
by the FBI.  The FBI presented a photo array to Mr. Anderson which included
Appellant's photo.  Agents asked Mr. Anderson if he could identify a third

suspect involved in the robbery on November 8, 2005. Mr. Anderson stated that he could not identify anyone in the photo array.   (App. 531, 544, 890-892)  In June of 2009 Mr. Anderson was transported from the Pennsylvania State Prison System to the Federal Detention Center as a material witness in preparation for the trial in this matter.  (App. 901)  On the day when he was scheduled to meet with the prosecutor and the agents, he was brought from the Federal Detention Center to the U.S. Courthouse and placed in the Marshal's holding cell along with all three defendants.  Mr. Anderson stated that while inside the holding cell, he recognized Glorious Shavers and Andrew White, as two of the three people that robbed 3060 North 8th Street on November 8, 2005.  He testified that he recognized another individual in the holding cell, as the third individual involved in the robbery.  He identified Appellant as that third person.  Mr. Anderson stated that he first noticed Appellant when he was escorted from the cell block awaiting transport to the Marshal's holding pen.  (App. 892-895)  Mr. Anderson provided a description of that third person on the night of the robbery, however, admitted that he only saw the face of this third individual for approximately twenty seconds.  (App. 566-569)

The next witness called by the government was Alberto Vasquez.  (App. 960-1046).  Mr. Vasquez, a lifelong drug dealer, testified that on November 8,

2005 in the early morning hours, he arrived at 3060 North 8th Street at the

speakeasy.  (App. 960-962). Mr. Vasquez stated that generally he would go to

the speakeasy after 2:00 a.m. in the morning, have a few drinks in the basement

where the alcohol was located, and then go home.  Mr. Vasquez stated that he

was on the first floor watching several people play cards when three armed men

wearing hoodies entered through the front door. He further stated that the

speakeasy was closed at the time of the robbery. (App. 960-969)  Mr. Vasquez

stated that all three of the robbers had their faces covered initially.  However, the

individual that robbed him pulled his scarf off his face during the robbery.  Mr.

Vasquez identified Appellant as that person.  (App. 980)  Almost three years

later the FBI showed Mr. Vasquez a photo array which included Appellant's

photo.  After viewing the photo array he identified Appellant as being the person

involved in the robbery. (App. 983-986) However, Mr. Vasquez admitted, both

during the motion to suppress, as well as during the trial, that one of the reasons

why he was able to identify Appellant was because of the birthmark on his cheek.

(App. 341-363,1022-1044)  Mr. Vasquez stated emphatically that he had no

doubt in his mind at the time of the robbery that the person that robbed him had a

birthmark on his cheek.  (App. 364).  Upon further inquiry Mr. Vasquez

admitted that at the time of the photo array he told the FBI that he could not

determine whether the person involved in the robbery was Appellant or another individual in the array. (App. 377-381) He further admitted on cross-examination that the person in the photo did not have a birthmark on his face and that he was mistaken about that. (App. 392,1022-1044)

Ebony Gist was the government's next witness. (App. 1292-1326, 1379-1418) Ebony Gist testified that in November of 2005 she was living in a house at 5220 Heston Street in Philadelphia. On the night of the robbery Ms. Gist indicated that she had heard a discussion among several of the individuals inside the house about a postal robbery. It was through Ms. Gist that the government first introduced evidence of the uncharged postal robbery against Appellant and his co-defendants. (App. 1300-1307) Ms. Gist testified that in the early morning hours of November 8, 2005, she overheard Appellant discussing the arrest of co-defendants Glorious Shavers and Andrew White. Ms. Gist further testified that Appellant stated that the injury he received on his head was from a kiddie pool that he was  hiding under. (App 1307-1309) Shortly after the discussion regarding the postal robbery, and the incident involving Appellant, Ms. Gist, Appellant, and several others left for Maryland. While in Maryland several people, including Ms. Gist and Appellant, stayed in a hotel. Ms. Gist was subsequently arrested and charged by Maryland authorities with selling drugs.

(App. 1311-1317)   The FBI paid a visit to her in prison and immediately she agreed to cooperate in exchange for their assistance.

The next witness Sheronda Gaskins, Appellant's former girlfriend, stated that on the night of the robbery she overheard Appellant and the others discussing a location that was "sweet." Ms. Gaskins testified that she observed Appellant, along with several others, leave the house late on November 7th or the early morning hours of November 8, 2005. She testified that when Appellant left the house he had a 9mm in his possession.   She further testified that upon his return later that day, Appellant made an admission regarding his involvement in a robbery earlier that morning. On cross-examination Ms. Gaskins admitted that she had perjured herself before the grand jury and was not prosecuted. (App. 1439) On direct she further stated that the reason why she didn't come forward with the truth is that she was afraid. On redirect the prosecutor asked her why she was afraid and she stated it was because "everyone knows that Glorious Shavers is a killer." The statement by Ms. Gaskins prompted motions for mistrial by all counsel. Those motions were denied by the trial judge. (App. 1419-1533)

The government's next witness, Jeanette Ketchmore, testified that she was the owner of property located at 3060 North 8th Street, Philadelphia,

Pennsylvania. Ms. Ketchmore testified that at the time of the robbery, there were several people downstairs playing cards. Significantly Ms. Ketchmore testified that the speakeasy was not operating at the time of the robbery, as she was in bed, and that she was not a victim of the robbery. She further testified that she purchased alcohol as a retail customer for sale to her friends and neighbors from her basement. The government also called her son Ricky Ketchmore who recounted his observations during the course of the robbery. (App. 389-420)

The government then called James Short, Jr., a Vice President for the Pennsylvania Liquor Control Board. He testified that back in November of 2005 he was in charge of purchasing all of the alcohol for distribution through the state stores in Pennsylvania. He further specified which alcohol products he purchased for sale to consumers. (App. 1534-1539)

Dorothy Harris, Custodian of Records for the Philadelphia Prison System, provided the foundation for the government to admit the tape recorded conversations between co-defendants, Glorious Shavers and Andrew White, and others including Appellant. These conversations originated from the county jail, and were initiated by either Glorious Shavers and/or Andrew White. (App. 1540-1546)

The government concluded its case by calling FBI agent Joseph Marjarowitz (App. 1548-1547, 1705) and Postal Inspector Kathleen Brady. (App. 1568-1575) Agent Marjarowitz testified that following Appellant's arrest in this case, he had a conversation with Appellant and based on that could identify his voice. Postal Inspector Brady further testified regarding the information developed during their investigation into the post office robbery.

Postal Inspector Brady testified that pursuant to a search warrant of 5220 Heston Street, items from the robbery were recovered from trash bags that were on the porch. Additionally, Inspector Brady testified regarding the prison tape recordings between Glorious Shavers, Andrew White and Appellant. During the course of that conversation the co-defendants made a request that Appellant speak to the witnesses in this case prior to the case being federally adopted. (App. 1568-1575)

## SUMMARY OF THE ARGUMENT

Pursuant to the Order of this Honorable Court, Appellant joins in the argument of co-counsel on several issues raised but not argued in the instant brief.  Appellant presents argument on four issues.

The first issue raised the Appellant challenges the District Court's decision denying his motion to suppress the identifications, as well as the one telephone conversation in which he was a party.  The in-court identification of both eyewitnesses were unduly suggestive, and therefore tainted by the adequate procedures.  As such, both the in-court as well as the out-of-court identifications of both witnesses should have been suppressed.

Additionally, Appellant challenges the decision by the trial court to admit the one telephone conversation in which Appellant was a party.  The evidence presented by the government was that the tape recorded telephone conversation from the prison provided a computerized warning to the recipient of the call. Appellant was not the recipient of the call, but rather joined the conversation after the warnings had been given and therefore without actual notice that the call was being recorded.  As such, this telephone conversation should have been suppressed.

The trial court erred in permitting the government to introduce the robbery of a post office, a crime for which Appellant was never charged.  In fact, a crime in which there is no evidence of his involvement.  This evidence should not have been admitted under Federal Rule of Evidence 404(b).  Likewise, this evidence should have been excluded under Federal Rule of Evidence 403.

The final issue is a challenge to a sufficiency of the evidence under the Hobbs Act.  The government failed to establish a nexus between the robbery of several individuals inside a known speakeasy, and interstate commerce.  At the time of the robbery the speakeasy was closed for the evening, and the operator of the speakeasy was not a victim of the robbery.

**ARGUMENT**

I.    **WHETHER THE DISTRICT COURT COMMITTED AN ABUSE OF DISCRETION BY DENYING APPELLANT'S PRE-TRIAL MOTIONS?**

    A.    **WHETHER THE DISTRICT COURT ERRED IN DENYING THE DEFENSE MOTION TO SUPPRESS, THAT IS BOTH THE OUT OF COURT AND IN-COURT IDENTIFICATIONS BY WITNESSES ALBERTO VASQUEZ AND BRIAN ANDERSON?**

An appellate court's review of a district court's denial of a motion to suppress is for clear error regarding the underlying facts, but exercises plenary review as to the legality of the lower court's decision in light of the court's properly established facts.   United States v. Givan, 320 F. 3d 452 (3rd Cir. 2003).

A due process violation occurs where the identification procedure is unduly suggestive, that is it creates a substantial likelihood of a misidentification. Manson v. Brathwaite, 432 U.S. 98, 97 S. Ct. 2243, 53 L.Ed.2d 140 (1977). A suggestive identification procedure alone does not violate due process as long as it possess sufficient aspects of reliability.  Additionally,  an in- court identification may be admitted only if there is an independent basis to do so. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed 2d 401 (1972).

In determining whether an independent basis for the identification exists, the court must examine several factors. These factors include the amount of time the victim had to view the perpetrator during the crime, the witness' degree of attention, the accuracy of the witness' prior description of the defendant, the level of certainty demonstrated by the witness when the confrontation occurs, and finally the length of time between the incident and the confrontation. Neil v. Biggers, supra.

In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed 2d 140 (1977), the Supreme Court made it clear that any out-of-court identification procedure which is employed by the police must apply the Biggers factors in determining whether the identification is reliable. In Manson v. Brathwaite, supra., the Supreme Court had to determine whether an identification based on the display of a single photo was unreliable. Applying the Biggers, factors, the Court concluded the under the totality of the circumstances the identification was reliable, and therefore admissible.

In contrast, the Third Circuit in United States v. Emaneule, 51 F.3d 1123 (3rd Cir. 1995), determined that the in- court identification testimony of a witness should not have been permitted where the witnesses failed to identify in a previous photo array and then viewed the defendant outside the courtroom in

13

shackles.  In Emaneule, supra., the witnesses were two bank employees who had

witnesses a bank robbery.  Both were showed photo arrays and failed to identify.

Both witnesses observed the defendant being led from the courtroom in the

custody of U.S. Marshal, and concluded that the defendant was the person that

robbed them.  Despite the opportunity to observe, this Honorable Court applied

the Biggers factors, including the previous failure to identify, as well as the

highly suggestive nature of the out of court confrontation, ruling that the out of

court confrontation violated due process as it was unduly suggestive.

Furthermore, since there was no independent basis for the in- court identification,

this Court ruled that should have been suppressed as well.  [Also see U.S. v.

Brownlee, 454 F.2d 131 (3rd Cir. 2006)].

      In this case, prior to trial, the government informed the defense that,

there was only one eyewitness that could identify Appellant, Alberto Vasquez.

Based on the discovery turned over by the government, two additional witnesses

were shown photo arrays containing the Appellant's photograph, and neither one

of those witnesses could make identification.  One of those two witnesses was

Brian Anderson.  Appellant filed a motion to suppress identification,

incorporating a corresponding motion in limine. (App. 95-110) These combined

motions were filed in order to challenge the admissibility of the out-court

identification, and prospective in-court identification of government witness
Alberto Vasquez.  The motion was filed as a challenge to the government's
attempt to introduce identification testimony from the eyewitnesses that had been
showed Appellant's photo but failed to make an identification.  One of these two
witnesses was Brian Anderson. (App. 531-576) Whether counsel's request was
prescient, or an ironic coincidence, the government's case was bolstered when
Brian Anderson was "placed" in the same holding cell along with Appellant and
his co-defendants.  On a day that Appellant's motions to suppress were scheduled
to resume, however, the court session was cancelled . The government did not
cancel the order to transport as they decided to conduct a prep session with
witness Brian Anderson. (App. 542-541) However, somehow the order to
transport Appellant and his co-defendants was not cancelled, consequently they
were transported to the U.S. Marshal Service holding cell.  It is unprecedented to
have a government witness placed in the same holding cell with the individuals
against whom he is to testify, but that is precisely what occurred on June 14,
2009.  For the safety of the government witnesses, as well as to maintain the
integrity of the process, it is against Justice Department policy, as well as Bureau
of Prisons procedure, to house a government witness in the same cell as the
defendants.  Brian Anderson should have been designated as a "separatee" with

respect Appellant and his co-defendants. On that day, Brian Anderson knew precisely why he was brought into federal custody, and quickly recognized the two individual s he had previously identified almost three years before, co-defendants, Glorious Shavers and Andrew White.  He then saw Appellant, stating that he first recognized Appellant as the third person involved in the robbery that occurred almost four years prior.  Anderson stated that he first recognized Appellant as they were being transported off the block to make the trip from the Federal Detention Center to the Marshall's holding cell inside the United States Courthouse. The circumstances of Anderson's identification of Appellant, while both are face to face in a holding cell, in the presence of the two previously identified co-defendants, is  as suggestive a post-incident confrontation as one could imagine.  Once Appellant became aware of this highly unusual identification procedure, the motion in limine transformed into a motion to suppress the identification of Brian Anderson.

Applying the factors set forth in Neil v, Biggers, supra. in determining reliability,  it is clear that the district court's decision to deny the motion to suppress with respect to Brian Anderson was an abuse of discretion. Mr. Anderson had only a short period of time to view the perpetrator's face at the time of the robbery.  While he stated he was looking at his face, it was the

early morning, he also stated that he was ordered to turn over on his stomach, so that the time he had to observe the perpetrator's face was approximately twenty seconds. (App. 566) On the night of the robbery Mr. Anderson did provide a description of the perpetrator to the police. The description provided to the police by Anderson was a generalized description, providing nothing more than height, weight and description of a gray hoodie. There was no description of skin color, facial hair or distinguishing marks or physical features. The description by Anderson was as follows, "black male, approximately 30, 6 feet 3 inches, approximately 225 pounds. All I can remember was that he was wearing a gray hoodie, and he had a black automatic handgun." (App. 533) However, three and half years later Anderson described the perpetrator as a light skinned male with a Sunni beard. (App. 533-535, 564) The fact that Anderson had previously viewed Appellant's photo in an array and could not make identification, further undermines the reliability of his "post-incident" identification. (App. 568-572) Additionally, Mr. Anderson testified that he believed he had observed the perpetrator subsequent to the robbery on Germantown Avenue. He later conceded that he was mistaken about this alleged sighting after conferring with the government. (App. 573-575) Finally, the time period between the incident and the post-incident confrontation in the Marshal's

holding cell circumvents any assertion of reliability regarding the identification. Based on all of these factors, a limited opportunity to observe,  prior failure to identify, subsequent misidentification, length of time between the robbery and post-incident confrontation, it is clear that the out-of-court identification should have been suppressed.  Additionally, there was an insufficient independent basis for the identification.  The government's inability to establish an independent basis, purged from the taint of the unduly suggestive procedure in the Marshal's holding cell, requires suppression of the in-court identification as well.

For all these reasons, we respectfully request that this Honorable Court reverse the decision of the district court and order both the out of court, as well as the in-court identification by Brian Anderson suppressed.

The second government witness subject to Appellant's motion to suppress identification was Alberto Vasquez. Mr. Vasquez testified during the evidentiary hearing on the motion to suppress, that Appellant was the individual that took his property directly from him. (App. 317) He testified that the individual he identified as Appellant initially had his face covered, but that he pulled back his hoodie so he could see his face. On June 25, 2008,  almost three years later the FBI presented a photo array to Mr. Vasquez and asked him if he could identify anyone in the array in connection with the robbery on November

8, 2009. (App. 377)  While Mr. Vasquez did point to the photo of Appellant,

identifying his as the person that robbed him three years earlier, he also admitted

that what he had initially stated to the FBI agent displaying the photo array, is

that he could not tell he could not tell whether it was the person in the first photo,

Appellant, or the person in the fourth photo, a unidentified filler. (App. 378-381)

Further undermining the reliability of his identification, Mr. Vasquez testified

that one of the key distinguishing features that made him certain that Appellant

was the person who robbed him three years prior, was the birthmark on his

cheek. On cross-examination Mr. Vasquez reiterated his certainty about this fact

by stating that he had no doubt in his mind that the person who robbed him had a

birthmark on his cheek at the time of the robbery. (App. 361-364) Finally,

Vasquez described the perpetrator as sporting a goatee. (App. 365) Eventually,

when confronted with the fact that Appellant did not have any mark on his face at

the time, but rather obtained a tattoo on his cheek at a later date, Vasquez later

admitted he made a mistake, despite his certainty. (App. 386-388)  Applying the

same factors set forth in Neil v. Biggers, supra., it is clear that the limited

opportunity to observe, almost three year time lapse between the robbery and the

photo array, in conjunction with the mistaken belief regarding the physical

characteristics of Appellant, renders the Vasquez identification unreliable.  As

19

such, the district court's denial of Appellant's motion to suppress as to the Vasquez identification was likewise an abuse of discretion.

Once the admission of the identification has been deemed a violation of the constitution, the Court must then determine whether the constitutional violation was harmless error. Foster v. California, 394 U.S. 440, 89 S. Ct. 1127, 22 L.Ed.2d 402 (1969); United States v. Emanuele, supra.

In this case there were only two eyewitnesses that could identify Appellant, Anderson and Vasquez. Other than these two witnesses the government's case against Appellant was based on the testimony of a witness who admitted to committing perjury, and another a jilted ex-girlfriend. The admission of the unduly suggestive identification testimony from both Anderson and Vasquez bolstered a very weak case against Appellant. Certainly the admission of these tainted, unreliable identifications can hardly be deemed harmless in light of the totality of the government's case against Appellant. Based on all of the above, we respectfully request that this Honorable Court reverse the conviction and grant Appellant's motion to suppress, thereby excluding the identification testimony of both Anderson and Vasquez.

**B.    WHETHER THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE TELEPHONE CONVERSATIONS RECORDED FROM THE PRISON?**

In United States v. Paul, 614 F.2d 115 (6th Cir. 1980), the Sixth

Circuit ruled that recording phone calls between an inmate and third parties, is

under Federal regulations, a part of a correctional officer's duties.  In United

States v. Clark, 651 F. Supp. 71 (M.D. Pa. 1986), the district court addressed

the question of whether the recording of telephone conversations between an

inmate and non-inmates was a violation of Title III.  The question of whether it

became a violation of the Fourth Amendment was contingent upon whether or not

the proper consent was secured, and whether that consent was confirmed by the

receipt of the call in conjunction with the computerized warning offered in

advance of the call.  More recently, in United States v. Harrison, 986 F. Supp.

280 (M.D. Pa. 1997), the district court addressed the question of whether there

was an expectation of privacy on behalf of the recipient of a prison call.  In

Harrison supra., the defendant was indicted on charges of conspiracy to commit

money laundering. Subsequently, he filed a motion to suppress the evidence

asserting that the telephone conversations between him and a prison inmate,

alleged to have been involved in the money laundering scheme, were recorded

without his consent. The Sixth Circuit held that the defendant did not have an

expectation of privacy for the purpose of the Fourth Amendment.  The Court's

decision was contingent upon the content of the telephone calls, specifically

references to prison security and the fact that the calls may be subject to

monitoring.  In United States v. Von Poyck, 77 F.3d 285 (9th Cir. 1996), the

Court ruled that inmates do not have a reasonable expectation of privacy for

outgoing telephone calls.  In United States v. Solomon, W.L. 2702792 (W.D.

Pa. 2007), in an unreported decision, the district court dealt with a similar issue.

The question was whether telephone calls from state prisons to third parties

should be suppressed.  In that case this Honorable Court ruled that it should not

be suppressed as there was clearly a recorded message indicating that the

outgoing calls were subject to both monitoring and recording.

    In this case there were several conversations recorded from prison

involving the co-defendants. However, there was only one conversation in which

Appellant was heard conversing with both co-defendants who were incarcerated

at the time. There is a recorded warning informing the recipient of the call that it

would be recorded. (App.2118-2126)  However, Appellant is not on the phone

when the warning is provided. Appellant is handed the telephone later in the

conversation and proceeds to make several incriminating statements in

conjunction with his co-defendants' request to speak to the witnesses. The phone

conversation, clearly demonstrates that Appellant is not the phone when the

warning is provided, and therefore was never informed that the telephone

conversation would be recorded. The failure to establish this information violates

Appellant's Fourth Amendment rights under the United States Constitution. The

district court erred in permitting the conversation involving Appellant to be

admitted. This constitutional violation cannot be deemed harmless as the recorded

statements made by Appellant directly incriminates him.  As such the motion to

suppress should have been granted as to the one telephone conversation involving

Appellant.

**II.    WHETHER THE DISTRICT COURT ERRED IN PERMITTING THE GOVERNMENT TO INTRODUCE OTHER CRIMES EVIDENCED PURSUANT TO 404(B) AND 403 SPECIFICALLY THAT APPELLANT AND HIS CO-CONSPIRATORS WERE INVOLVED IN THE UNCHARGED ARMED ROBBERY OF A POST OFFICE?**

From its inception, the investigation into the robbery of the "speakeasy"

was driven by the government's failure to develop any firm evidence in the

robbery of a Philadelphia post office.  The government asserted the position that

someone among the group of defendants were associated with, including

Appellant, were involved in the post office robbery as well as the robbery that

occurred at the speakeasy were also involved in the post office robbery.  (App.

1300-1304, 1567-1574) Armed with only suspicions in the post office robbery,

the government endeavored to develop a case against those involved in the robbery at the speakeasy. There is no greater prejudice to a defendant's right to a fair trial on the crimes charged, than to introduce evidence that the defendant had committed a similar crime either before, or subsequent to the crime charged. Appellant challenged the admissibility of any evidence related to the post office robbery under Federal Rule of Evidence 404(b) ad 403. The district court permitted the government to introduce the evidence, and the prosecution did so in its case in chief.

A district court's decision to admit evidence pursuant to Federal Rule of Evidence 404(b) and 403 is reviewed for abuse of discretion.

The general rule is that evidence will be admitted if it is relevant.  Fed. R. Evid. Rule 402. Rule 404(b) limits the admission of relevant evidence if the evidence relates to other charged or uncharged crimes, wrongs or acts. Such evidence would be inadmissible to prove the character of the person charged in order to show that he/ she acted in conformity with those other uncharged, unrelated crimes.  The general rule of exclusion is based on the concern that a jury could infer that because a defendant had previously committed crimes or other bad acts that the defendant is more likely to have committed the crime charged.  United States v. Sriyuth, 98 F.3d 739 (3rd Cir. 1996).  Such evidence

must be evaluated under Rule 404(b), unless the evidence is considered intrinsic to the charges in the indictment. United States v. Blyden, 964 F.2d 1375( 3rd Cir. 1992); United States v. Gibbs, supra.; United States v. Cross, 303 F.3d 308 (3rd Cir. 2002).

To satisfy Rule 404(b) evidence of other acts must (1) have the proper evidentiary purpose; (2) be relevant under 402; (3) satisfy Rule 403, in other words not be substantially more prejudicial and probative; and (4) be accompanied by a limiting instruction. United States v. Butch, 256 F.3d 171 (3rd Cir. 2001).  Other acts evidence satisfies the first two requirements if it is probative of a material issue other than character.  Huddleston v. United States, 485 U.S. 681, 108 S. Ct. 1496, 99 L.Ed 2nd 771 (1998).   United States v. Morley, 199 F.3d 129 (3rd Cir. 1999).  This chain of logic must not include a link involving an inference that a bad person is disposed to do bad acts.  United States v. Echeverri, 854 F.2d 638 (3rd Cir. 1998).  While this Court has regarded Rule 404(b) as a rule of inclusion as opposed to a rule of exclusion, the government must establish that the admission of such evidence is to establish a fact other than impugning the defendant's character. United States v. Jemal, 26 F.3d 1267 (3rd Cir. 1994)

The government is also required to proffer a specific reason for the admissibility of such evidence. The government may not rely on the blanket assertion that the evidence falls under one of the accepted reasons for its admissibility pursuant to 404(b). When deciding whether to admit other acts under 404(b), a trial court must consider two issues. First, whether evidence fits under exceptions to the 404(b) rule of exclusion, and secondly whether under 403 the probative value outweighs its prejudicial effect. United States v. Sampson, 980 F.2d 883 (3rd Cir. 1992); United States v. Himelwright, 43 F.3d 777 (3rd Cir.1994); United States v. Jemal, 26 F.3d 1267 (3rd Cir. 1994).

Federal Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations upon due delay, waste of time, or needless presentation of cumulative evidence." It creates a presumption of admissibility. United States v. Universal Rehabilitation Services (PA), 205 F.3d 657 (3rd Cir. 2000) (en banc). Evidence cannot be excluded under Rule 403 merely because the unfair prejudicial effect is greater than the probative value. Rather evidence may be excluded only if its unduly prejudicial impact substantially outweighs its probative value. Even highly probative evidence is subject to balancing.

26

Federal Rule of Evidence 403 provides that evidence although relevant may be excluded if its probative value is substantially outweighed by its unfair prejudice, confuses the issues or misleads the jury.  <u>United States v Driggs</u>, 823 F.2d 52 (3rd Cir. 1987).

In <u>United States v. Wong</u>, 703 F.2d 65 (3rd Cir. 1983) the Third Circuit followed the First Circuit's decision acknowledging that Rule 403 was not designed to overrule more specific rules.  Rather, Rule 403 was designed as a guide for dealing with situations where no specific rules have been formulated. <u>United States v. Kiendra</u>, 663 F.2d 349 (1st Cir. 1981).  In <u>United States v. Hernandez</u>, 975 F.2d 1035 (4th Cir. 1992) the Court applied a 403 balancing analysis to reverse the district court's decision to admit evidence of defendant's prior sale of crack.  In that case there was no indication that the district court conducted the required balancing test.  Although the government may prove overt acts in a conspiracy which are not limited to the specific acts listed in the indictment, it is well settled that the government can only introduce those acts as long as there is no prejudice to the defendants.  <u>United States v. Adam</u>, 534 F.2d 31 (3rd Cir. 1996).   Although it is true that Rule 404(b) evidence is probative when the charged offense involves a conspiracy, it still must be evaluated under 403. <u>United States v. Cross</u>, 308 F.3d 308 (3rd Cir. 2002).  Additionally, 403

balancing applies whether it is intrinsic or extrinsic.  United States v. Echeverri, 854 F.2d 638 (3rd Cir. 1988).

In United States v. Sampson, 980 F.2d 83 (3rd Cir. 1992), the district court admitted two prior drug convictions in the defendant's trial for conspiracy and possession with intent to distribute.  The conviction was reversed as those prior convictions should not have been admitted under 404(b) and 403. Although the decision to admit the evidence is discretionary, the application of the rule is not. When the court fails to perform a 403 analysis there is no way to review that decision without a reversal.  The record in Sampson did not disclose a 403 balancing analysis.  The Third Circuit in Sampson noted that this case is similar to the facts set forth in Government of the Virgin Islands v. Pinney, 967 F.2d 912 (3rd Cir. 1992).  In that case this Court reversed a conviction because the trial court did not explain why it was denying defendant's motion under Rule 403, and the reason for doing so was not otherwise apparent for the record. Thus the claim that the defendant is prejudiced by the introduction of testimony regarding bad acts committed by their co-conspirators will be weighed under Rule 403.  See United States v. Brady, 26 F.3d 282 (2nd Cir.1994). After determining that the evidence of crimes committed by cooperating co-conspirators was not within the scope of 404(b), the Court analyzed the evidence

28

under 403 concluding that it was admissible because it was probative of the existence and nature of the conspiracy and was not unduly prejudicial.

In United States v. Murray, 103 F.3d 310 (3rd Cir. 1997), the Third Circuit ruled that evidence that the defendant committed an uncharged murder was not admissible.  However, even it was admissible as an uncharged crime it should have been excluded as more prejudicial than probative.  The Third Circuit in Murray reversed in part because the Rule 403 discussion was off the record and based on the court's conclusory statement. In Murray the Third Circuit found that the district court's 404(b) and 403 errors were not harmless. While this Court has upheld the decision in several notable cases, to allow evidence of uncharged murders, rape, and threats to kill, (See respectively United States v. Scarfo, 850 F.2d 1015 (3rd Cir. 1988); United States v. Sriyuth, 98 F.3d 739 (3rd Cir. 1996); United States v. Green, supra.) this case is dramatically different.

The evidence of the post office robbery offered no probative value to the government's case against Appellant and his co-defendants. Other than the association with a group that was suspected of committing that robbery earlier that same day, there was no nexus connecting these two robberies.  The government's assertion  that there was a correlation between the robbery that occurred at the post office and the robbery at the speakeasy, hours later and miles

apart, is simply not sufficient to permit the introduction of this unduly prejudicial evidence. Furthermore, the government could not proffer any evidence that indicated that the crimes were similar in nature, or even committed by the same group of individuals. The evidence of the post office robbery, which had been the focus of the federal investigation, was admitted for the sole purpose of smearing Appellant and his co-defendants with stench of an uncharged crime. None of the exceptions to the 404(b) general rule of exclusion was applicable. The case against Appellant and his co-defendants was in no way bolstered by any of the evidence related to the robbery of the post office. Evidence establishing access to weapons, identity of the perpetrators, method of operation, that might typically be offered to assist the jury in its fact finding, was simply not present in this case. The government witnesses that provided testimony against Appellant and his co-defendants regarding their involvement in the robbery in this case, could not provide any firm evidence of their involvement in the post office robbery. Therefore there this evidence did not provide any value to the jury's determination of Appellant and his co-defendants' guilt in this case, other than to establish the propensity to commit the crime.

Applying the appropriate analysis under 403, the probative value of this evidence as set forth above was negligible, while the prejudicial impact was

overwhelming. The rule requires that following a court's determination that the evidence is admissible under Rule 404(b), the court must apply an additional balancing test to determine whether if admission of the uncharged crime against a defendant, would deprive him of a fair trial. In this case the prejudicial impact poses an unusual situation as the admission of the uncharged crime (the robbery of a federal agency) was directly related to a element missing in the Hobbs Act robbery charged in the indictment, namely federal jurisdiction. [See the argument on the Hobbs Act jurisdiction below]  Admission of the uncharged crime, which clearly provided the missing factual support for the element of the crime charged, that is a connection to federal jurisdiction, blurred the lines between these two crimes causing confusion. So while the jury struggled with the weakness in the government's case on whether there was a connection between the robbery and interstate commerce, that element was supplied by the improper consideration of the federal interest in Appellant, and his co-defendants as a result of the vague, tenuous connection between them and post office robbery. The unduly prejudicial impact is clear. The uncharged crime cannot be used to fill the hole in the government's case. The confusion caused by the strong federal interest in the uncharged crime, but the weak factual connection to the Appellant and co-defendants, and the strong factual connection to the robbery that was devoid of

federal jurisdiction, was overwhelming. Under the balancing test required

pursuant to Rule 403, the uncharged crime should have been excluded. the

district court's failure to exclude this evidence was an abuse of discretion.

**III.  WHETHER THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN A CONVICTION UNDER THE HOBBS ACT WHERE THERE IS AN INSUFFICIENT NEXUS BETWEEN THE ROBBERY AND INTERSTATE COMMERCE?**

Appellant joins in the argument submitted by Glorious Shavers in his brief,

however feels compelled to address this issue as well. The standard of review for

a challenge to the sufficiency of the evidence is that the reviewing court views the

evidence in the light most favorable to the government, and will sustain the

verdict is any fact finder could have found the essential elements beyond a

reasonable doubt. United States v. Voigt, 89 F.3d 1054 (3rd Cir. 1996)

In order to sustain a conviction under the Hobbs Act, the government must

prove that the underlying crime has a probable effect on interstate commerce.

Specifically, they must prove that the criminal conduct charged, obstructed,

delayed or affected interstate commerce.    18 U.S.C. §1951(a).    The Third

Circuit has defined the contours of this jurisdictional requirement by crafting a

flexible approach. United States v. Urban, 404 F.3d 754 (3rd Cir. 2005); United

States v. Haywood, 363 F.3d 200, 209-10 (3rd Cir. 2004); United States v.

Clausen, 328 F.3d 708,711 (3rd Cir. 2003).    In order for the government to

establish federal jurisdiction, this Honorable Court has set the ill-defined framework for what has been termed a "potential" effect upon, or a "de minimis" connection to, interstate commerce. Essentially, if the robbery "produces an interference with or affect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution" under the Hobbs Act. Unites States v. Haywood, 363 F.3d 200, 210 (3rd Cir. 2004) (quoting Jund v. Town of Hempstead, 941 F.2d 1271, 1285 (2nd Cir. 1991).

Several other Circuits have been reluctant to find a nexus between the robbery of the individual in his/her home and interstate commerce. See United States v. Jimenez-Torres, 435 F.3d 3, 8 (1st Cir. 2006) ("where the crime concerns the robbery of a home rather than of a business, we approach the task of applying the de minimis standard with some caution, most every robbery, which by definition has some economic component, would become a federal crime."); United States v. Rodriguez-Casiano, 425 F.3d 12, 13 (1st Cir. 2005); United States v. Lynch, 282 F.3d 1049, 1054 (9th Cir. 2002). The courts have found that there is a distinction between the robbery/extortion of a business and the robbery/extortion of an individual under the Hobbs Act. United States v. Wang, 222 F.3d 234 (6th Cir. 2000). For example, a small sum of money stolen from a private individual does not, "through aggregation, affect interstate

commerce merely because the individual happens to an employee of a national company…" United States v. Collins, 40 F.3d 95, 100 (5th Cir. 1994). The Fourth Circuit has also drawn an important line of demarcation as well. If the robbery of an individual were found to effect interstate commerce merely because of the real, or perceived perception of the individual's business by interfering with his work, the breach of 1951(a) would be ubiquitous, and any robbery, in our closely interwoven economy, arguably could affect interstate commerce.") United States v. Buffey, 899 F.2d 1402, 1406 (4th Cir. 1990).

In United States v. Mattson, 671 F.2d 1020, 1025 (7th Cir. 1982), the Seventh Circuit ruled that connecting an employee of a company to the ability of that company to purchase goods through interstate commerce was insufficient. In United States v. Collins, supra., the Fifth Circuit set forth a test of when a robbery of an individual, rather than a business, purportedly violates Section 1951(a). In order to establish that a criminal act, directed toward an individual violates Section 1951(a), the government must establish jurisdiction in one of three ways. This can be established if, (1) The assets of the victim is directly and customarily engaged in interstate commerce. United States v. Merolla, 523 F.2d 51 (2nd Cir. 1975). It may also be established by, (2) If the acts cause or create the likelihood that the individual will deplete the assets of an entity engaged in

interstate commerce. United States v. Beparias, 805 F.2d 1447 (11th Cir. 1986), cert. denied, 482 U.S. 916 (1987) (kidnapping and extortion created the probability using interstate entity funds to pay ransom), or (3) if the number of individuals victimized or the sum at stake was so large there would be some cumulative effect on interstate commerce. Jund v. Town of Hempstead, 941 F.2d 1271, 1285 (2nd Cir. 1991). (See also, United States v. Farrell, 877 F.2d 870 (11th Cir.), cert. denied 493 U.S. 922, 110 S. Ct. 289 (1989). In United States v. Murphy, 768 F.2d 1518 (7th Cir. 1985), cert. denied 475 U.S. 1012, the payment of bribes by lawyers depleted the aggregate ability to purchase law books and office supplies that moved in interstate commerce.

In United States v. Parks, 497 F.3d 220 (2nd Cir. 2007), the Second Circuit determined that the Hobbs Act requires the jury to find beyond a reasonable doubt whether the conduct at issue effected, or would have affected interstate commerce. Therefore, a robbery targeting drugs for their proceeds does not impact interstate commerce as a matter of law. In United States v. Williams, 342 F.3d 350 (4th Cir. 2003), the Court held that drug dealing is inherently an economic enterprise that affects interstate commerce and that the robbery of drug dealers is the kind of act that satisfies the elements of affecting interstate commerce under the Hobbs Act. In United States v. Peterson, 263 F.3d 848 (7th

Cir. 2001) the Seventh Circuit ruled that the testimony of a DEA agent that the marijuana which was the object of the robbery was the type that was not normally grown within the confines of the state based on what he knew and that it was highly unlikely although possible that the marijuana originated in the state was insufficient to establish the interstate nexus requirement for a Hobbs Act conviction.    According to the evidence the source of the marijuana was based on strained inferences and was insufficient to support a conviction.

In this case, as counsel for Glorious Shavers argues in detail, the "business," a neighborhood speakeasy, was neither the target of the robbery, nor were the owners the victims. The testimony of the owner of the residence, Jeanette Ketchmore, and her son Ricky, made it very clear that the basement bar was closed at the time of the robbery, and that she was not a robbery victim. (App. 388-420)  We request this Honorable Court to draw a clear line of demarcation regarding federal jurisdiction under the Hobbs Act. The conceptual connection cannot transform into the real simply because we can imagine and then manufacture a connection between the crime and interstate commerce. This was a state crime. If we allow this slippery slope to blur the borders between state and federal jurisdiction, the discretionary power of the government to

charge a state  crime in federal court becomes unlimited, and the breach, as the

Fourth Circuit in <u>Collins</u> advises, would be ubiquitous.

## CONCLUSION

WHEREFORE, Appellant respectfully requests that this Honorable Court reverse the judgment of conviction as the evidence was insufficient as a matter of law to convict under the Hobbs Act.  Alternatively, Appellant respectfully requests that this Honorable Court reverse the judgment of conviction and order suppression of the identification evidence as well as the telephone conversation involving Appellant.  Additionally, we request that along with this Order reversing the conviction that the evidence of the postal robbery be excluded from Appellant's new trial.


/s/ **Paul J. Hetznecker, Esquire**
**Paul J. Hetznecker, Esquire**
**Attorney for Appellant, Jermel Lewis**


**DATE:**  **June 1, 2011**
_____

## COMBINED CERTIFICATION

## BAR MEMBERSHIP

I, Paul J. Hetznecker, Esquire, hereby certify that I am a member in good standing with the Bar of this Court.

## CERTIFICATION OF WORD COUNT

This brief is in compliance with the word count limitation of Fed. App. R. 32(a)(7)(b)  This brief contains a word count of 9,724.

## ELECTRONIC FILING

The text of the electronic brief filed with the Clerk is identical to the text in the paper copies.

## VIRUS CHECK

A virus detection program has been run on the electronic file sent to the Clerk for filing and no virus was detected.


/s/ Paul J. Hetznecker, Esquire
PAUL J. HETZNECKER, ESQUIRE
Attorney for Appellant, Jermel Lewis


DATE:   June 1, 2011

## <u>CERTIFICATE OF SERVICE</u>

I, Paul J. Hetznecker, Esquire, certify that a copy of the foregoing was served upon the following individuals on this date via U.S. Mail, postage pre-paid:

**Arlene D. Fisk, Esquire**
**Assistant United States Attorney**
**United States Attorney's Office**
**615 Chestnut Street, 12th Floor**
**Philadelphia, PA  19106**

**Jermel Lewis**
**Inmate No. 63376-066.**
**FCI- Bennettsville**
**P.O. Box 52020**
**Bennettsville, SC 29512**

<u>/s/ Paul J. Hetznecker, Esquire</u>
Paul J. Hetznecker, Esquire
Attorney for Appellant, Jermel Lewis

Date:  <u>June 1, 2011</u>

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

_____

## NO. 10-2931
_____

### UNITED STATES OF AMERICA,
**Appellee**

**v.**

### JERMEL LEWIS
**Appellant**

---

### APPENDIX VOLUME I

---

**PAUL J. HETZNECKER, ESQUIRE**
**1420 WALNUT STREET, SUITE 911**
**PHILADELPHIA, PA 19102**
**(215) 893-9640**
**ATTORNEY FOR APPELLANT**

_____

# TABLE OF CONTENTS

**PAGE**

United States District Court Criminal Docket Sheet------------------     A1-A13

---

## <u>CERTIFICATE OF SERVICE</u>

I, Paul J. Hetznecker, Esquire, certify that a copy of the foregoing was served upon the following individuals on this date via U.S. Mail, postage pre-paid:

**Arlene D. Fisk, Esquire**
**Assistant United States Attorney**
**United States Attorney's Office**
**615 Chestnut Street, 12th Floor**
**Philadelphia, PA  19106**

**Jermel Lewis**
**Inmate No. 63376-066.**
**FCI- Bennettsville**
**P.O. Box 52020**
**Bennettsville, SC 29512**

/s/ Paul J. Hetznecker, Esquire
Paul J. Hetznecker, Esquire
Attorney for Appellant, Jermel Lewis

Date:  June 1, 2011