No. 10-2931

IN THE

# United States Court of Appeals

FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA

*Appellee,*

v.

JERMEL LEWIS, A/K/A STAR, A/K/A PR-STAR, A/K/A P

*Appellant.*

ON APPEAL FROM JUDGMENT OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA, NO. 2:08-CR-00161
BY THE HONORABLE J. CURTIS JOYNER

## BRIEF OF AMICUS CURIAE AMACHI, INC.
## IN SUPPORT OF APPELLANT AND FOR VACATUR

J. Wesley Earnhardt
Michael P. Addis
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Amicus Curiae*

December 23, 2014

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Amicus Curiae certifies that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS............................................................................. ii

TABLE OF AUTHORITIES ......................................................................iv

STATEMENT OF INTEREST ....................................................................1

SUMMARY OF ARGUMENT ...................................................................1

ARGUMENT ..........................................................................................4

I.    The Alleyne Error Here Was a Pure-Sentencing Error that Was
      Preserved and, Therefore, Is Not Harmless....................................................4

      A.    Alleyne Errors That Are Combined Trial/Sentencing Errors
            Versus Alleyne Errors That Are Pure-Sentencing Errors. ...................5

            1.    Alleyne Errors That Are Combined Trial/Sentencing
                  Errors........................................................................................6

            2.    Alleyne Errors That Are Pure-Sentencing Errors. .....................7

      B.    The Alleyne Error Here Was a Pure-Sentencing Error that
            Requires Vacating the Aggravated Sentence and Remanding for
            Resentencing on the Indicted Crime. ................................................10

            1.    The Alleyne Error Here Was a Pure-Sentencing Error. ...........10

            2.    The Alleyne Sentencing Error Was Not Harmless, First,
                  Because it Aggravated Mr. Lewis's Punishment......................12

            3.    The Alleyne Sentencing Error Cannot Be Harmless,
                  Second, Because it Constructively Amended the
                  Indictment. ..............................................................................13

                  a.    Structural Errors, if Preserved, Cannot Be Harmless......13

                  b.    Here, the Effective Constructive Amendment Was
                        Structural Error. .............................................................14

        c.     Mr. Lewis Preserved the <u>Alleyne</u> Sentencing Error. ...... 18

    4.     Neither <u>Recuenco</u> Nor <u>Cotton</u> Suggests that the <u>Alleyne</u> Sentencing Error Was Harmless. .............................................. 18

        a.     <u>Recuenco</u> Did Not Address Indictments. ...................... 18

        b.     <u>Cotton</u>, if Anything, Suggests that Constructive Amendments Are Structural Errors. ............................... 19

    5.     Supreme Court Precedent and Basic Constitutional Principles Explain Why Constructive Amendments, Where Preserved, Cannot Be Harmless. ................................................ 21

        a.     Fifth-Amendment Right to Indictment by Grand Jury. ................................................................................ 22

        b.     Sixth-Amendment Right to Notice. ................................ 25

        c.     Unanticipated Ramifications of Constructive Amendments. ................................................................... 26

II.    If the Court Nevertheless Analyzes the Error as Trial Error, the Omitted Brandishing Element Must Be Both Uncontested and Supported by Overwhelming Evidence for the Omission from the Instructions To Be Harmless. ................................................................................................. 27

    A.    An Omitted Element Must Be Uncontested for the Instructional Omission To Be Harmless. ................................................................. 27

    B.    The Instructional Omission of Brandishing Cannot Be Harmless if Mr. Lewis Contests the Element while on Direct Appeal. .............. 30

CONCLUSION ................................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alleyne v. United States, 133 S. Ct. 2151 (2013)..............................................passim

Apprendi v. New Jersey, 530 U.S. 466 (2000) ........................................2, 10, 21, 25

Chapman v. California, 386 U.S. 18 (1967) ............................................................16

Cole v. Arkansas, 333 U.S. 196 (1948) ...................................................................22

Connecticut v. Johnson, 460 U.S. 73 (1983) ...................................................... 28-29

Descamps v. United States, 133 S. Ct. 2276 (2013).................................... 10, 25-26

Dunn v. United States, 442 U.S. 100 (1979) ...........................................................21

Hobbs v. State, 44 Tex. 353 (1875) .........................................................................24

In re Oliver, 333 U.S. 257 (1948) (Rutledge, J., concurring).................................25

In re Winship, 397 U.S. 358 (1970).........................................................................31

Jackson v. Virginia, 443 U.S. 307 (1979)...............................................................21

Johnson v. United States, 520 U.S. 461 (1997) ......................................................13

Lambert v. Blackwell, 387 F.3d 210 (3d Cir. 2004)...............................................22

Neder v. United States, 527 U.S. 1 (1999) .......................................................passim

Puckett v. United States, 556 U.S. 129 (2009) ...........................................15, 20, 26

Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477 (1989) ............16

Rose v. Clark, 478 U.S. 570 (1986)................................................................... 28-29

Russell v. United States, 369 U.S. 749 (1962) .......................................... 17-18, 23

Stirone v. United States, 361 U.S. 212 (1960).....................................................passim

Taylor v. United States, 495 U.S. 575 (1990).........................................................10

United States v. Coniglio, 417 F. App'x 146 (3d Cir. 2011)...................................28

United States v. Cotton, 535 U.S. 625 (2002) ....................................... 17-18, 19-21

United States v. Daraio, 445 F.3d 253 (3d Cir. 2006) ............................................15

United States v. Korey, 472 F.3d 89 (3d Cir. 2007) ..............................................28

United States v. Lara-Ruiz, 721 F.3d 554 (8th Cir. 2013)...............................passim

United States v. Lewis, 766 F.3d 255 (3d Cir. 2014), vacated, No. 10-2931
     (3d Cir. Nov. 25, 2014).................................................................................passim

United States v. Lewis, 766 F.3d 255 (3d Cir. 2014)
     (Rendell, J., dissenting)................................................................................passim

United States v. Marcus, 560 U.S. 258 (2010) .......................................................20

United States v. Maynie, 257 F.3d 908 (8th Cir. 2001)...................................5, 9, 11

United States v. Pizarro, No. 12-1759, 2014 WL 6090601 (1st Cir. Nov. 14,
     2014) ...........................................................................................................passim

United States v. Pizarro, No. 12-1759, 2014 WL 6090601 (1st Cir. Nov. 14,
     2014) (Lipez, J., concurring) .......................................................................passim

United States v. Promise, 255 F.3d 150 (4th Cir. 2001)........................... 5, 8, 10-11

United States v. Spinner, 180 F.3d 514 (3d Cir. 1999) .................................... 17-18

United States v. Syme, 276 F.3d 131 (3d Cir. 2002)..................................14, 15, 17

United States v. Vazquez, 271 F.3d 93 (3d Cir. 2001) (en banc)..........4, 5, 9, 12, 18

United States v. Zavala-Martí, 715 F.3d 44 (1st Cir. 2013) .............................. 20-21

Vasquez v. Hillery, 474 U.S. 254 (1986)....................................................14, 23, 24

Washington v. Recuenco, 548 U.S. 212 (2006)..................................... 5, 6, 7, 18-19

v

**Constitutional Provisions, Statutes, and Rules**

U.S. Const. amend. V ................................................................................22

U.S. Const. amend. VI ..............................................................................25

18 U.S.C. § 924(c)(1)(A)(i) ...................................................................1, 10

18 U.S.C. § 924(c)(1)(A)(ii) ..................................................................2, 11

Fed. R. App. P. 29(a) ..................................................................................1

Local Rule 29.1 ..........................................................................................1

# STATEMENT OF INTEREST[1]

Amachi, Inc. is a Philadelphia-based 501(c)(3) corporation that mentors children of incarcerated parents.  Over 300,000 children, from all 50 states and over 250 cities, have been mentored at Amachi-modeled programs during the past 15 years.

Amachi knows too well the wide-ranging societal, communal, and familial impacts that criminal defendants' choice of plea and ultimate prison sentence have.  Amachi has seen firsthand how plea deals (or the lack thereof) and prison-sentence length impact defendants' children.  Ex-post-facto changes in statutory-sentencing exposure affect both plea considerations and ultimate prison-sentence length and likely would drastically impact Amachi's mentees.

# SUMMARY OF ARGUMENT

It is undisputed that "the indictment, jury charge, and verdict were all consistent" here:  (i) the grand jury indicted Mr. Lewis on the offense of using or carrying a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(i); (ii) the trial judge instructed the jury on the elements of that offense; and (iii) the jury

---

[1] Amachi certifies that the parties consent to this filing.  (Fed. R. App. P. 29(a).)  No party, party's counsel, or person, other than Amicus Curiae's counsel, authored the brief in whole or part or contributed money intended to fund preparing or submitting this pro-bono brief.  Pursuant to Local Rule 29.1, Amicus Curiae files within 28 days after the November 25, 2014 order granting en banc rehearing.

1

found Mr. Lewis guilty of that offense.  United States v. Lewis, 766 F.3d 255, 264

n.9 (3d Cir. 2014), vacated, No. 10-2931 (3d Cir. Nov. 25, 2014).  Yet, the trial

court sentenced Mr. Lewis for a separate, aggravated offense—brandishing a

firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii)—and applied the

heightened mandatory-minimum sentence for that separate offense.  Id. at 258.

Everyone agrees that was error under Alleyne v. United States, 133 S.

Ct. 2151 (2013).  "Alleyne error" occurs when a sentencing judge applies a

statutory-minimum sentence despite the jury not finding an element necessary to

trigger that minimum.  Id. at 2155.  Alleyne error is similar to "Apprendi error",

which occurs when a sentencing judge applies a statutory-maximum sentence

despite the jury not finding an element necessary to trigger that maximum.

Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

The key question in this case is whether the court's Alleyne error was

a combined trial/sentencing error or a pure-sentencing error.  The answer is

significant because a combined trial/sentencing Alleyne error is sometimes

harmless, whereas a pure-sentencing Alleyne error is never harmless.

Here, the trial court's error was purely a sentencing error—Mr. Lewis

was sentenced for a crime that was never part of the otherwise-valid proceedings in

any form prior to sentencing.  The panel majority erred by (i) applying a harmless-

error test used only for combined trial/sentencing errors and (ii) concluding that, under that test, the improper minimum sentence imposed here was harmless.

**The Panel Majority Applied the Wrong Test.**  Under controlling Supreme Court precedent, the type of <u>Alleyne</u> error committed here—where the defendant is sentenced for a crime for which he was never indicted, jury-charged, or convicted—is purely a sentencing error that is not amenable to the panel majority's "combined trial/sentencing harmless-error test" and, so long as it is preserved, is not harmless and must be vacated.  Stated differently, the trial court aggravated Mr. Lewis's punishment by sentencing him, over objection, for a greater offense than the crime of indictment and conviction, effectively amending his indictment post hoc and, in the process, committing a non-harmless structural error that must be vacated.  (Section I.)

**The Panel Majority Reached the Wrong Result.**  Even if the Court were to apply the harmless-error test specific to combined trial/sentencing errors, the omission of the brandishing element from the jury instructions cannot be harmless if Mr. Lewis contests brandishing during this appeal.  (Section II.)

## ARGUMENT

**I.  The <u>Alleyne</u> Error Here Was a Pure-Sentencing Error that Was Preserved and, Therefore, Is Not Harmless.**

In analyzing whether the <u>Alleyne</u> error was purely a sentencing error, the panel majority concluded that a "'sentencing-error-only' interpretation is inconsistent with our holding in <u>Vazquez</u> that <u>Apprendi</u> error (along with the corollary <u>Alleyne</u> error) is both trial and sentencing error".  <u>Lewis</u>, 766 F.3d at 264 n.9 (citing <u>United States v. Vazquez</u>, 271 F.3d 93, 101-02 (3d Cir. 2001) (en banc)).  The majority then fashioned a novel harmless-error test to address Mr. Lewis being sentenced for a crime for which he was never indicted, <u>i.e.</u>, "whether the grand jury, if asked, would have charged [Lewis] with brandishing a firearm".  <u>Id.</u> at 270.  The majority also applied a harmless-error test to address Mr. Lewis being sentenced for a crime for which he never was convicted, <u>i.e.</u>, whether the jury "would have found [the brandishing] element beyond a reasonable doubt" "had the jury been properly instructed on that element".  <u>Id.</u> at 271.[2]

---

[2] The majority also suggested that Lewis characterized the error "as having occurred at [] indictment, trial, and sentencing".  <u>Id.</u> at 264 n.9.  That is inaccurate; in the majority's own words, Lewis "cite[d] extensively", <u>id.</u> at 266 n.12, to <u>United States v. Lara-Ruiz</u>, 721 F.3d 554 (8th Cir. 2013) in arguing that "he was sentenced for a crime different from the one for which the jury found him guilty", Reply Brief for Lewis at 5, 4-8, No. 10-2931 (3d Cir. filed Dec. 23, 2013) ("Lewis Reply").

The panel dissent explained that the proper test "is simply whether Lewis was prejudiced by his unconstitutional sentence". Id. at 272 (Rendell, J., dissenting). The dissent distinguished Vazquez because, there, the indictment charged the aggravated crime, id. at 273, while, here, it did not.[3]

The majority erred for the reasons explained below.

### A.    Alleyne Errors That Are Combined Trial/Sentencing Errors Versus Alleyne Errors That Are Pure-Sentencing Errors.

The panel majority's fundamental misconception was that all Alleyne (and Apprendi) errors must be judged under the harmless-error test for combined trial/sentencing errors. As explained more fully below, although certain Alleyne errors are combined trial/sentencing errors that properly are reviewed under the trial-error harmless-error test (see, e.g., Washington v. Recuenco, 548 U.S. 212, 221-22 (2006); United States v. Pizarro, No. 12-1759, 2014 WL 6090601, at *7, 11 (1st Cir. Nov. 14, 2014)), other Alleyne errors, like the one here, are pure-sentencing errors that, when preserved, cannot be harmless (see, e.g., Alleyne, 133 S. Ct. at 2164; United States v. Lara-Ruiz, 721 F.3d 554, 558-59 (8th Cir. 2013); United States v. Maynie, 257 F.3d 908, 920-21 (8th Cir. 2001); United States v. Promise, 255 F.3d 150, 160 (4th Cir. 2001)).

---

[3] The dissent also advocated for the broader, unnecessary position that all Alleyne and Apprendi errors should be reviewed as sentencing errors. Id. There is no proper one-size-fits-all approach.

5

### 1. <u>Alleyne</u> Errors That Are Combined Trial/Sentencing Errors.

"[W]here a defendant <u>was indicted for</u> and convicted of an aggravated offense and the jury was <u>not</u> instructed on the element triggering the statutory mandatory minimum sentence, but that minimum was nevertheless applied at sentencing, the <u>Alleyne</u> error is analyzed as an instructional error, occurring at trial."  <u>Pizarro</u>, 2014 WL 6090601, at *7 (first emphasis added).

In <u>Recuenco</u>, for example, "the State of Washington charged [Recuenco] with assault in the second degree, <u>i.e.</u>, 'intentiona[l] assault … with a deadly weapon, to-wit:  a handgun'".  548 U.S. at 215.  The jury found Recuenco guilty after instructions on the elements for assault while armed with a deadly weapon; however, there was no instruction on the aggravating element of a firearm.  <u>Id.</u> at 215-16.  The judge sentenced Recuenco, over an objection lodged at sentencing, for the aggravated firearm offense, committing <u>Apprendi</u> error by applying a statutory sentencing enhancement without a requisite jury finding.  <u>Id.</u>; <u>id.</u> at 225 (Ginsburg, J., dissenting).  The Supreme Court held that the harmless-error test from <u>Neder v. United States</u>, 527 U.S. 1 (1999) applied.  <u>Recuenco</u>, 548 U.S. at 220-22.  Under the <u>Neder</u> test, where jury instructions omit an element of the indicted charge and that error is preserved, the omission is harmless if "a reviewing court concludes beyond a reasonable doubt that the omitted element was

6

uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error".  <u>Neder</u>, 527 U.S. at 17.

Therefore, where the court commits a combined trial/sentencing <u>Alleyne</u> error—by failing to instruct the jury on an element triggering the mandatory-minimum sentence of the <u>indicted charge</u> and, over the defendant's objection, imposing that aggravated sentence—<u>Neder</u>'s harmless-error test applies.  <u>See</u> <u>Recuenco</u>, 548 U.S. at 221-22; <u>see also</u> <u>Pizarro</u>, 2014 WL 6090601, at *8.  <u>Neder</u>'s trial-error review asks whether the trial jury would have found the indicted charge's aggravating element; thus, a defendant with a combined trial/sentencing <u>Alleyne</u> error challenges the conviction for the indicted offense, not solely the sentence imposed.

### 2.  <u>Alleyne</u> Errors That Are Pure-Sentencing Errors.

By contrast, some <u>Alleyne</u> errors are pure-sentencing errors.  <u>Alleyne</u> itself involved a type of pure-sentencing error.  There, a special verdict form required the jury to consider, as an optional finding, the minimum-triggering element of "[b]randish[ing] a firearm in connection with the crime of violence".  (Jury Verdict, <u>United States v. Alleyne</u>, No. 10-cr-00134-REP (E.D. Va. Sept. 7, 2010), ECF No. 67.)[4]  <u>Alleyne</u> explained that "[t]he jury indicated on the verdict

---

[4] The <u>Alleyne</u> indictment included "brandish" in the pertinent count; however, the count was titled "Using, Carrying, and Possessing a Firearm in Relation to a

form that Alleyne had '[u]sed or carried a firearm during and in relation to a crime of violence,' but did not indicate a finding that the firearm was '[b]randished'". Alleyne, 133 S. Ct. at 2156. Despite the jury rejecting brandishing, the trial judge applied the aggravated mandatory-minimum sentence for that "separate, aggravated offense" of brandishing. Id. at 2162.

Thus, the error in Alleyne "was confined to sentencing". Pizarro, 2014 WL 6090601, at *7. Accordingly, the Court vacated Alleyne's sentence and, without reviewing the trial evidence, "remand[ed] for resentencing consistent with the jury's verdict", Alleyne, 133 S. Ct. at 2164.

Other circuits have recognized other types of pure-sentencing Alleyne errors. Lewis, 766 F.3d at 274 (Rendell, J., dissenting). For example, where a defendant "was properly charged with, and convicted of" one offense but sentenced for an aggravated offense, the Fourth Circuit held that "the error was not in [the] conviction"; "[t]he problem … lies with [the] sentence". Promise, 255 F.3d at 160. Likewise, where "neither the indictment nor the jury verdict referenced brandishing a firearm", but the court sentenced the defendant for

---

Crime of Violence". Indictment at 2, Alleyne, No. 10-cr-00134-REP (E.D. Va. May 5, 2010), ECF No. 8. To the extent jury deliberation on "brandishing" was improper given the indicted charge, any error was irrelevant because the jury rejected "brandishing".

brandishing, the Eighth Circuit found sentencing error. Lara-Ruiz, 721 F.3d at

558-59; see also Maynie, 257 F.3d at 920-21 (same for Apprendi error).

*       *       *

To summarize, Alleyne errors that involve a failure to instruct the jury

on an element of an indicted offense are combined trial/sentencing errors that are

analyzed under Neder's harmless-error test. By contrast, Alleyne errors that

involve a defendant being sentenced for a crime that was never indicted, or for a

crime that the jury rejected, are pure-sentencing errors that can never be harmless;

resentencing must occur.

*       *       *

Until now, the issue of a preserved, pure-sentencing Alleyne or

Apprendi error has not been before the Third Circuit. (This Circuit has been faced

with combined trial/sentencing Apprendi errors and has analyzed those errors

under the proper trial-error approach. In Vazquez, for example, the en banc Court

analyzed an unpreserved, trial/sentencing Apprendi error—for failure to instruct on

an aggravating element encompassed in the indicted charge—under plain-error

review for a trial-error instructional omission. Vazquez, 271 F.3d at 99, 102.

Vazquez, though correctly decided on its facts, does not address the situation here.

It did not involve a defendant sentenced for a crime for which he was never

9

indicted.)  Although this Circuit has not addressed the type of error at issue here,

the Supreme Court has, as explained below.

### B.  The <u>Alleyne</u> Error Here Was a Pure-Sentencing Error that Requires Vacating the Aggravated Sentence and Remanding for Resentencing on the Indicted Crime.

#### 1.  The <u>Alleyne</u> Error Here Was a Pure-Sentencing Error.

A defendant can be sentenced only for a crime for which he was

indicted and convicted:  "[t]he judge's role in sentencing is constrained at its outer

limits by the facts alleged in the indictment and found by the jury".  <u>Apprendi</u>, 530

U.S. at 483 n.10.  "[A] defendant can be convicted only if the jury has found each

element of the crime of conviction".  <u>Alleyne</u>, 133 S. Ct. at 2162.

Under Supreme Court precedent, the "crime of conviction" is

ascertained by "consult[ing] a limited class of documents".  <u>Descamps v. United

States</u>, 133 S. Ct. 2276, 2281 (2013).  Where there was a jury trial, the "charging

paper and jury instructions" identify the crime of conviction.  <u>Id.</u> at 2283-84 (citing

<u>Taylor v. United States</u>, 495 U.S. 575, 602 (1990)).

Here, because "the indictment, jury charge, and verdict were all

consistent with respect to the 'use and carrying' element of § 924", <u>Lewis</u>, 766

F.3d at 264 n.9, Mr. Lewis's "crime of conviction" was using or carrying a firearm

during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(i).  That is the only crime on

that count for which he constitutionally can be sentenced.  Thus, just as in <u>Promise</u>,

255 F.3d at 160, <u>Lara-Ruiz</u>, 721 F.3d at 558-59, and <u>Maynie</u>, 257 F.3d at 920-21, it was pure-sentencing error to sentence Mr. Lewis for brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii), because that offense was not charged in the indictment, instructed upon to the jury, or found beyond a reasonable doubt by the jury.  <u>Lewis</u>, 766 F.3d at 273-74 (Rendell, J., dissenting).

Indeed, the government's position that Mr. Lewis's codefendants should **<u>not</u>** be resentenced for brandishing reinforces that the error was confined to sentencing.  (Consolidated Brief of United States at 20, <u>United States v. Shavers, et al.</u>, No. 10-2931 (3d Cir. filed Oct. 29, 2013) ("United States Brief").)  For any preserved <u>Alleyne</u> combined trial/sentencing error, an appellate court asks whether the trial jury would have found the indicted charge's aggravating element.  Thus, a combined trial/sentencing <u>Alleyne</u> error affects the conviction for the indicted offense.  If an <u>Alleyne</u> instructional omission is harmless, the appellate court would affirm the conviction for the aggravated offense, such that the aggravated sentencing range **<u>would</u>** apply at any (otherwise scheduled) resentencing.  <u>See</u> <u>Pizarro</u>, 2014 WL 6090601, at *14.  By recognizing that the "mandatory minimum sentence for brandishing should **<u>not</u>** be applied", where resentencing is otherwise warranted here, (United States Brief at 20 (emphasis added)), the government essentially concedes that this <u>Alleyne</u> error was pure-sentencing error.

11

**2.  The <u>Alleyne</u> Sentencing Error Was Not Harmless, First, Because it Aggravated Mr. Lewis's Punishment.**

The panel majority stated that it "need not resolve" that the "'sentencing-error-only' interpretation" of the <u>Alleyne</u> error in this case "is inconsistent with our holding in <u>Vazquez</u> that <u>Apprendi</u> error (along with the corollary <u>Alleyne</u> error) is both trial and sentencing error" "[b]ecause Lewis does not seriously challenge the application of the harmless error test (and thus concedes that he loses under harmless error review regardless of when that error occurred)".  <u>Lewis</u>, 766 F.3d at 264 n.9.  The majority was fundamentally mistaken on multiple levels.

<u>First</u>, Mr. Lewis in no way "concede[d] that he loses under harmless error review"; he argued that harmless-error review would be inappropriate in the first place and that he would meet it if it nonetheless applied.  Citing <u>Lara-Ruiz</u>, 721 F.3d at 558, he argued that "[t]he crucial factor is whether such an increase [in sentencing range] 'aggravates the punishment' and results in the direct loss of liberty connected with the crime".  (Lewis Reply at 5-6.)  It clearly does, as the Supreme Court found in <u>Alleyne</u> itself.  133 S. Ct. at 2158, 2161.

<u>Second</u>, the panel majority applied the harmless-error test for combined trial/sentencing <u>Alleyne</u> errors as opposed to the test for pure-sentencing <u>Alleyne</u> errors.  For pure-sentencing <u>Alleyne</u> errors, as Mr. Lewis argued, "the

question is simply whether [the defendant] was prejudiced by his unconstitutional sentence".  <u>Lewis</u>, 766 F.3d at 272 (Rendell, J., dissenting).  "[I]t is impossible to dispute that facts increasing the legally prescribed floor <u>aggravate</u> the punishment. Elevating the low-end of a sentencing range heightens the loss of liberty associated with the crime".  <u>Alleyne</u>, 133 S. Ct. at 2161 (citations omitted).  Thus, exactly like the pure-sentencing error in <u>Alleyne</u> itself, Mr. Lewis's sentencing error requires vacating the aggravated sentence for brandishing and "remand[ing] the case for resentencing consistent with the jury's verdict", <u>id.</u> at 2164, and the indictment.

### 3. The <u>Alleyne</u> Sentencing Error Cannot Be Harmless, Second, Because it Constructively Amended the Indictment.

Considered another way, the sentencing court also transformed, ex-post-facto, Mr. Lewis's conviction for "using or carrying"—the offense charged in the indictment and tried to the jury—into the "separate, aggravated offense" of "brandishing".  <u>Alleyne</u>, 133 S. Ct. at 2162.  Mr. Lewis preserved that error.  As a result, the Court cannot find it harmless.

#### a.  Structural Errors, if Preserved, Cannot Be Harmless.

As the Supreme Court uses the term, "structural error" "is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself".  <u>Johnson v. United States</u>, 520 U.S. 461, 468

13

(1997).  Structural errors, <u>where preserved</u>, always require reversal.  <u>Vasquez v.</u>

<u>Hillery</u>, 474 U.S. 254, 263-64 (1986).

### b. Here, the Effective Constructive Amendment Was Structural Error.

"[A]fter an indictment has been returned its charges may not be

broadened through amendment except by the grand jury itself."  <u>Stirone v. United</u>

<u>States</u>, 361 U.S. 212, 215-16 (1960).  Mr. Lewis argued that the sentencing error

constructively amended the indictment, amounting to structural error.  (Lewis

Reply at 7-8.)

The panel majority was "not persuaded by Lewis's argument based

upon <u>Stirone</u> and its progeny" for essentially two reasons.  <u>Lewis</u>, 766 F.3d at 269.

<u>First</u>, the majority cited Third Circuit dicta for the view that "'it is doubtful that

constructive amendments are structural errors as the Supreme Court has defined

that category. … Notably, neither <u>Johnson</u> nor <u>Neder</u> cited <u>Stirone</u> or listed

constructive amendments as one of the narrow class of recognized structural

errors'".  <u>Lewis</u>, 766 F.3d at 269 (quoting <u>United States v. Syme</u>, 276 F.3d 131,

155 n.10 (3d Cir. 2002)).  <u>Second</u>, the majority attempted to distinguish

<u>Alleyne</u>/<u>Apprendi</u> constructive amendments from <u>Stirone</u> constructive

amendments.  <u>Id.</u> at 270.

14

Both positions are incorrect. The majority misconstrues the concept of "structural error" and misapplies Supreme Court and Third Circuit precedent.

Stirone held that "[d]eprivation of [the] basic right" "to be tried only on charges presented in an indictment and returned by the grand jury" "is far too serious to be treated as nothing more than a variance and then dismissed as harmless error". 361 U.S. at 217. Syme, the very case the panel majority cited, likewise held, under Stirone, that "constructive amendments are constitutional errors that are of sufficient magnitude that they cannot be dismissed as harmless when a defendant objects to them in the district court". Syme, 276 F.3d at 154 n.8 (citing Stirone, 361 U.S. at 217). Indeed, the Lewis panel majority itself recognized that constructive amendments are "'per se reversible under harmless error review'". Lewis, 766 F.3d at 269 (quoting United States v. Daraio, 445 F.3d 253, 259-60 (3d Cir. 2006)). Thus, Stirone, Syme, and the panel majority here all agree that a constructive amendment to an indictment is a non-harmless structural error, as the Supreme Court defines the term.[5]

---

[5] Syme used the term "structural error" to mean error that should be corrected under plain-error review, regardless of whether it prejudiced the defendant. See Syme, 276 F.3d at 153. Not only has the Supreme Court defined "structural error" differently, but, unlike Syme, it has refrained from addressing whether "structural errors" automatically satisfy the prejudice element of the plain-error test. See Puckett v. United States, 556 U.S. 129, 140-41 (2009).

Indeed, because <u>Stirone</u> expressly held that constructive amendments to indictments, where preserved, cannot be harmless, this Court must apply <u>Stirone</u>. Where "a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions". <u>Rodriguez de Quijas v. Shearson/Am. Express, Inc.</u>, 490 U.S. 477, 484 (1989).

Here, contrary to the panel majority's suggestion, subsequent Supreme Court cases have not undermined <u>Stirone</u> (let alone overruled it) or carved-out an <u>Alleyne</u>/<u>Apprendi</u> exception to <u>Stirone</u>. <u>Chapman v. California</u>, 386 U.S. 18 (1967), the case that paved the way for harmless-error review for constitutional errors, recognized that harmless-error review would not apply where "our prior cases have indicated that … constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error". <u>Id.</u> at 23. <u>Stirone</u> undeniably was such a case, having asserted that "[d]eprivation of [the] basic right" "to be tried only on charges presented in an indictment and returned by the grand jury" "is far too serious to be treated as nothing more than a variance and then dismissed as harmless error". <u>Stirone</u>, 361 U.S. at 217.

The sentencing court constructively amended the indictment here. Under the panel majority's own definition, a "[c]onstructive amendment 'occurs

16

where a defendant is deprived of his substantial right to be tried only on charges

presented in an indictment returned by a grand jury'". Lewis, 766 F.3d at 269

(quoting Syme, 276 F.3d at 148). Everyone agrees that Mr. Lewis was indicted for

"using or carrying" but sentenced for the "separate, aggravated offense", Alleyne,

133 S. Ct. at 2162, of "brandishing". A constructive amendment ordinarily occurs

**before** sentencing and is deemed structural error **even where** a trial jury finds all

elements of the new offense. The constructive amendment here—which occurred

after jury verdict and thus removed from the jury's consideration the necessary

aggravating element—is even more egregious than the typical constructive

amendment.[6]

---

[6] Given that Mr. Lewis's indictment properly charged "using or carrying" but
the court sentenced for "brandishing", the error is more appropriately characterized
as a constructive amendment than an indictment omission. However, indictment
omissions, where preserved, also require reversal. See Russell v. United States,
369 U.S. 749, 770-71 (1962).

In United States v. Spinner, the Third Circuit held that where "an indictment
fails to allege all elements of an offense", the omission cannot be harmless. 180
F.3d 514, 515-16 (3d Cir. 1999). The Lewis panel majority suggested that Spinner
"found automatic reversal to apply on grounds that 'the indictment in [Spinner's]
case was jurisdictionally defective'". Lewis, 766 F.3d at 269 n.15 (quoting
Spinner, 180 F.3d at 516). According to the majority, since United States v.
Cotton, 535 U.S. 625, 631 (2002), held that a defective indictment does not deprive
a court of jurisdiction, "Spinner is … of limited utility in this case". Id. The
majority misinterpreted Spinner. Spinner did not reverse on the ground that
"indictment defects are jurisdictional"—the principle overruled in Cotton—rather
Spinner reversed because the indictment omitted the "jurisdictional element"
essential to the federal crime, i.e. "the interstate commerce element". Spinner, 180

17

### c. Mr. Lewis Preserved the <u>Alleyne</u> Sentencing Error.

Everyone agrees that Mr. Lewis preserved the <u>Alleyne</u> sentencing

error; "[t]he government concedes this point". <u>Lewis</u>, 766 F.3d at 270 n.16.

<u>Stirone</u>, therefore, proscribes finding the constructive amendment harmless.

### 4. Neither <u>Recuenco</u> Nor <u>Cotton</u> Suggests that the <u>Alleyne</u> Sentencing Error Was Harmless.

### a. <u>Recuenco</u> Did Not Address Indictments.

The panel majority relied heavily on <u>Recuenco</u>, representing that it

"provides the missing link between this case and our analysis in <u>Vazquez</u> because

it recognized that errors in an indictment can be harmless". <u>Lewis</u>, 766 F.3d 264-

65. <u>Recuenco</u> did no such thing.

<u>First</u>, as the panel dissent pointed out, <u>Lewis</u>, 766 F.3d at 277

(Rendell, J., dissenting), <u>Recuenco</u> made clear that its holding did not address

indictment errors. In his brief, Recuenco attempted to argue that "the State did not

allege the fact at issue in the charging instrument", (Brief for Respondent, 2006

WL 160299, at *19). However, the Supreme Court entirely avoided that issue:

"Respondent also attempts to evade <u>Neder</u> by characterizing this as a case of

charging error, rather than of judicial fact-finding. Brief for Respondent 16-19.

---

F.3d at 515-16. Hence, <u>Spinner</u>'s holding, consistent with <u>Russell</u> that indictment
omissions, where preserved, require reversal, was unchanged by <u>Cotton</u>.

Because the Supreme Court of Washington treated the error as one of the latter

type, we treat it similarly."  Recuenco, 548 U.S. at 220 n.3.

Second, as the panel dissent explained, Recuenco did not involve a

federal indictment at all:  "The majority opinion in Recuenco never once mentions

errors in an indictment, the Fifth Amendment, or the defendant's right to a grand

jury, and it is obvious why.  That case concerned a state prosecution which

involved an information, rather than an indictment."  Lewis, 766 F.3d at 277

(Rendell, J., dissenting).

### b.  Cotton, if Anything, Suggests that Constructive Amendments Are Structural Errors.

In United States v. Cotton, 535 U.S. 625 (2002), a grand jury

originally indicted for aggravated conspiracy and drug-possession by charging

drug quantity, but a superseding indictment omitted that aggravating drug-quantity

element.  Id. at 627-28.  Likewise, the jury instructions omitted that aggravating

element, and the trial jury found defendants guilty.  Id. at 628.  The sentencing

court committed Apprendi error by sentencing defendants to the aggravated

crimes.  Id. at 632.  Significantly, the defendants "did not object in the District

Court to the fact that these sentences were based on an amount of drug quantity not

alleged in the indictment".  Id. at 628.  As the Lewis panel dissent pointed out, "the

issue before the Court [in Cotton] was waiver of rights, and the Court briefly

19

compared the [Fifth and Sixth] Amendments only to note the 'longstanding rule that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right'". <u>Lewis</u>, 766 F.3d at 277 n.6 (Rendell, J., dissenting) (quoting <u>Cotton</u>, 535 U.S. at 634).

The panel majority claimed <u>Cotton</u> "avoided the question of whether <u>Apprendi</u> error is structural". <u>Lewis</u>, 766 F. 3d at 262. That characterization is inaccurate. <u>Cotton</u> did not avoid addressing whether indictment error is structural; rather, <u>Cotton</u> "declined to resolve whether 'structural' errors—those that affect the framework within which the trial proceeds—automatically satisfy the third prong of the plain-error test". <u>Puckett v. United States</u>, 556 U.S. 129, 140 (2009) (citing <u>Cotton</u>, 535 U.S. at 632); <u>see also</u> <u>United States v. Marcus</u>, 560 U.S. 258, 263 (2010) (<u>Cotton</u> "reserve[ed] the question whether 'structural errors' automatically satisfy the third 'plain error' criterion").

Whether a constructive amendment is structural error was not before the Court in <u>Cotton</u>. But, citing <u>Stirone</u>, <u>Cotton</u> nonetheless affirmed the "settled proposition of law" "that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form". 535 U.S. at 631. <u>Cotton</u> did not change <u>Stirone</u>.

Finally, since "the grand jury in <u>Cotton</u> had originally charged a drug quantity consistent with the district court's judgment", "the Court carried out the

20

original charging decision when it rejected the defendants' claim of plain error".

United States v. Zavala-Martí, 715 F.3d 44, 53 (1st Cir. 2013).  Therefore,

Cotton's Fifth-Amendment right to grand-jury indictment was not eliminated in the

same way as here.  "Moreover, when they were indicted for a second time, the

Cotton defendants, in light of the original indictment, would have understood that

the charged conspiracy exposed them to the lengthy sentences ultimately

imposed", id., so Cotton's Sixth-Amendment right to notice was not implicated in

the same way as here either.

### 5. Supreme Court Precedent and Basic Constitutional Principles Explain Why Constructive Amendments, Where Preserved, Cannot Be Harmless.

"[U]nder the Due Process Clause of the Fifth Amendment and the

notice and jury trial guarantees of the Sixth Amendment, any fact … that increases

the maximum penalty for a crime must be charged in an indictment, submitted to a

jury, and proven beyond a reasonable doubt."  Apprendi, 530 U.S. at 476.

As the panel dissent explained, "[t]o uphold a conviction on a charge

that was neither alleged in an indictment nor presented to a jury at trial offends the

most basic notions of due process."  Dunn v. United States, 442 U.S. 100, 106

(1979), quoted in Lewis, 766 F.3d at 274 (Rendell, J., dissenting).  "It is axiomatic

that a conviction upon a charge not made or upon a charge not tried constitutes a

denial of due process."  Jackson v. Virginia, 443 U.S. 307, 314 (1979).  Indeed,

"[n]o principle of procedural due process is more clearly established than that

notice of the specific charge, and a chance to be heard in a trial of the issues raised

by that charge, if desired, are among the constitutional rights of every accused in a

criminal proceeding in all courts, state or federal."  Cole v. Arkansas, 333 U.S.

196, 201 (1948); see also Lambert v. Blackwell, 387 F.3d 210, 246 (3d Cir. 2004)

("[A] defendant's due process rights are violated when his conviction is affirmed

on an offense that he was not charged with and that was not presented to the jury or

court that tried him.").

### a.  Fifth-Amendment Right to Indictment by Grand Jury.

The Fifth Amendment provides, "No person shall be held to answer

for a capital, or otherwise infamous crime, unless on a presentment or indictment

of a Grand Jury[;] … nor be deprived of life, liberty, or property, without due

process of law".  U.S. Const. amend. V.  This grand-jury guarantee applies to

federal felonies.  Stirone, 361 U.S. at 215.

"The very purpose of the requirement that a man be indicted by grand

jury is to limit his jeopardy to offenses charged by a group of his fellow citizens

acting independently of either prosecuting attorney or judge."  Id. at 218.  "[A]fter

the indictment [is] changed it [is] no longer the indictment of the grand jury who

presented it.  Any other doctrine would place the rights of the citizen, which were

22

intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney." Id. at 216-17. "To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure." Russell, 369 U.S. at 770.

The discretion afforded the grand jury explains why constructive amendments, where preserved, cannot be harmless. "The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count … —all on the basis of the same facts." Vasquez v. Hillery, 474 U.S. 254, 263 (1986). "Moreover, [t]he grand jury is not bound to indict in every case where a conviction can be obtained." Id. In Vasquez, the Supreme Court held that a defendant's conviction must be reversed "when he is indicted by a grand jury from which members of a racial group purposefully have been excluded" because "even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction on the indicted offense, that confirmation in no way suggests that the discrimination did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come". Id. at 262-

23

63.  See Hobbs v. State, 44 Tex. 353 (1875) (reversing conviction, even though the jury found all elements for that conviction, because the indictment charged a lesser crime), cited in Alleyne, 133 S. Ct. at 2162.

"[A] deficient indictment affects the entire adjudicatory framework, and consequently defies analysis by harmless error standards."  Lewis, 766 F.3d at 278 (Rendell, J., dissenting).  Because Mr. Lewis preserved the error of being sentenced for a non-indicted crime, the panel majority's consideration of what the grand jury would have done, Lewis, 766 F.3d at 271, was inherently flawed. Because the grand jury had "the power to charge a greater offense or a lesser offense" and was "not bound to indict" on the greater offense of brandishing even if "a conviction [could have been] obtained", Vasquez, 474 U.S. at 263, it is impossible to conclude, even by considering other language in the indictment, that a constructive amendment was harmless.  It is improper to apply harmless-error review to constructive amendments simply because harmless-error review is applied to instructional omissions of an element of an indicted offense.  Indeed, given grand-jury discretion to do something other than indict or not indict, jury-trial harmless-error review is completely inapplicable to sentences imposed for non-indicted crimes.

24

### b. Sixth-Amendment Right to Notice.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be informed of the nature and cause of the accusation". U.S. Const. amend. VI. "The requirement, of course, contemplates that the accused be so informed sufficiently in advance of trial or sentence to enable him [first] to determine the nature of the plea to be entered and [second] to prepare his defense if one is to be made." In re Oliver, 333 U.S. 257, 279 n.1 (1948) (Rutledge, J., concurring). "Defining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment." Alleyne, 133 S. Ct. at 2161.

Notice of a seven-year mandatory-minimum sentence for brandishing, as opposed to a five-year mandatory-minimum sentence for using or carrying, if convicted, could affect a defendant's decision to accept a plea offer. Thus, the constructive amendment to Mr. Lewis's indictment affected his ability "to determine the nature of the plea to be entered", Oliver, 333 U.S. at 279 n.1 (Rutledge, J., concurring).

Apprendi recognized that a defendant's notice of the crime charged is critical to preparing his defense. 530 U.S. at 478. "A defendant, after all, often has little incentive to contest facts that are not elements of the charged offense—

25

and may have good reason not to.  At trial, extraneous facts may confuse the jury.

(Indeed, the court may prohibit them for that reason.)"  <u>Descamps</u>, 133 S. Ct. at

2289.  As the panel dissent reasoned, "[f]rom indictment to conviction, neither

Lewis nor any similarly situated defendant would foresee the need to defend

against such a separate offense, asserted only at the sentencing phase".  <u>Lewis</u>, 766

F.3d at 279 (Rendell, J., dissenting).

Due to its interference with the Sixth-Amendment right to notice, a

constructive amendment "defie[s] analysis by harmless-error standards by

affecting the entire adjudicatory framework".  <u>Id.</u> at 278 (citing <u>Puckett</u>, 556 U.S.

at 140).

### c.  Unanticipated Ramifications of Constructive Amendments.

Allowing constructive amendments at sentencing may have

unanticipated ramifications for future proceedings.  For example, the Supreme

Court employs a "modified categorical approach" under the Armed Career

Criminal Act to determine whether a former offense serves as a predicate offense

for imposing a lengthy sentence for a subsequent crime.  <u>Descamps</u>, 133 S. Ct. at

2283-84.  As discussed above, <u>supra</u> at 10, a former "crime of conviction" can be

ascertained by consulting only the "charging paper and jury instructions".  <u>Id.</u>  If a

court at sentencing can change the crime of conviction, the "modified categorical

approach" would be futile because the "charging paper and jury instructions" would not identify the accurate crime of conviction.  Such an unanticipated consequence reinforces the <u>Stirone</u> rule that constructive amendments cannot be harmless.

**II.    If the Court Nevertheless Analyzes the Error as Trial Error, the Omitted Brandishing Element Must Be Both Uncontested and Supported by Overwhelming Evidence for the Omission from the Instructions To Be Harmless.**

**A.    An Omitted Element Must Be Uncontested for the Instructional Omission To Be Harmless.**

The error here was confined to sentencing and had the effect of constructively amending the indictment; therefore, the aggravated sentence should be vacated regardless of what the trial jury might have done had brandishing been the indicted crime and had the trial jury been instructed on brandishing.  However, if the Court nevertheless analyzes whether the trial jury would have found brandishing, the Court should apply the Supreme Court's harmless-error test for the instructional omission of an element.  As the panel majority here recognized, the failure to instruct on an element of the indicted offense can be harmless only "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested <u>and</u> supported by overwhelming evidence".  <u>Neder</u>, 527

U.S. at 17 (emphasis added), quoted in Lewis, 766 F.3d at 271.[7]  Despite

inconsistency in other circuits, see Pizarro, 2014 WL 6090601, at *16-18 (Lipez,

J., concurring), this Circuit has faithfully applied Neder, considering both whether

the omitted element was uncontested and supported by overwhelming evidence

before finding harmlessness.  E.g., Lewis, 766 F.3d at 271; United States v.

Coniglio, 417 F. App'x 146, 149 n.4 (3d Cir. 2011) ("The argument of the United

States that the evidence of bribery was 'overwhelming' does not alone carry the

day.  This was a case involving a large amount of sharply contested, circumstantial

evidence."); United States v. Korey, 472 F.3d 89, 97 (3d Cir. 2007) (citing Neder

for principle that "failure to instruct the jury as to an element of the charged crime

was harmless where evidence concerning the omitted element was overwhelming

and uncontested").

 This Circuit's practice is in line with Supreme Court precedent.

Before Neder, the Supreme Court repeatedly stated that harmless-error review

would be unavailable where a court directed a jury verdict of guilty in a criminal

---

 [7] Although the panel majority quoted the proper Neder test, the majority
improperly looked at whether "[t]he evidence adduced at trial was … sufficient to
demonstrate beyond a reasonable doubt" brandishing, Lewis, 766 F.3d at 271
(emphasis added).  The majority applied the wrong standard:  evidence of an
omitted element must be "overwhelming", not merely "sufficient", for the
omission of an element from the indicted offense to be harmless.  Neder, 527 U.S.
at 17.

case by omitting an element from instructions.  See Connecticut v. Johnson, 460

U.S. 73, 84-87 (1983); Rose v. Clark, 478 U.S. 570, 578-80, 580 n.8 (1986).  In

Neder, the trial court "explicitly directed the jury not to consider" an element.  527

U.S. at 16 n.1.  Justice Scalia's dissent, joined by Justices Souter and Ginsburg,

asserted that finding that omission harmless was equivalent to allowing a directed

verdict of guilty, which, under Rose, "would be per se reversible no matter how

overwhelming the unfavorable evidence".  Id. at 34 (Scalia, J., dissenting) (citing

Rose, 478 U.S. at 578).  The majority responded by reaffirming Rose's rule against

allowing directed guilty verdicts "regardless of how overwhelmingly the evidence

may point in that direction", Rose, 478 U.S. at 578.  See Neder, 527 U.S. at 17 n.2.

But Neder allowed harmless-error review for "the narrow class of cases" where

there was overwhelming evidence in support of the omitted, "uncontested element

of the offense".  Id. (emphases added).  As a First Circuit concurrence recently

stated, "the Court evidently used the requirement that the omitted element be

'uncontested' to justify departing from its repeated statements that harmless error

review would be unavailable where a court had directed a jury verdict of guilty in a

criminal case".  Pizarro, 2014 WL 6090601, at *20 (Lipez, J., concurring).  "The

Court emphasized that it was not taking an '"in for a penny, in for a pound"

approach'—i.e., by permitting harmless error review where the omitted element

was uncontested, the Court was carving out an extremely limited exception to its

29

bar against reviewing directed guilty verdicts for harmlessness." Id. (quoting

Neder, 527 U.S. at 17 n.2).

### B. The Instructional Omission of Brandishing Cannot Be Harmless if Mr. Lewis Contests the Element while on Direct Appeal.

Neder emphasized that not only did Neder not contest the omitted

element at trial, but he did not contest it before the Supreme Court and did "not

suggest that he would introduce any evidence bearing upon the issue … if so

allowed". Id. at 15-16. "[A]n instructional Alleyne error that occurred before

Alleyne was decided cannot be deemed 'uncontested,' and thus susceptible to a

finding of harmless error, based solely on a defendant's failure to address the

omitted element at trial." Pizarro, 2014 WL 6090601, at *22 (Lipez, J.,

concurring). A defendant "could not have been faulted for failing to contest an

issue at trial that was not, in fact, in play at that time". Id. This is especially so

here, where "[f]rom indictment to conviction, neither Lewis nor any similarly

situated defendant would foresee the need to defend against such a separate

offense, asserted only at the sentencing phase". Lewis, 766 F.3d at 279 (Rendell,

J., dissenting).

Thus, if, during en banc rehearing, Mr. Lewis makes any "argument

that could, as a theoretical matter under the law, negate" brandishing, including

potentially even "[a] challenge to the credibility of witnesses", Pizarro, 2014 WL

6090601, at *22 (Lipez, J., concurring), the Court should find omission of the

brandishing instruction non-harmless and vacate the aggravated sentence.  The

"ease of such a showing" is not problematic.  Id.  It is the government's burden to

prove harmlessness beyond a reasonable doubt; "'[i]t is critical that the moral force

of the criminal law not be diluted by a standard of proof that leaves people in doubt

whether innocent men are being condemned'".  Id. (quoting In re Winship, 397

U.S. 358, 364 (1970)).  A concern about the need for retrial, "to the extent it

influenced the majority's decision in Neder, is not present in the Alleyne

instructional error context because the non-harmless omission of a jury finding on

[an aggravating element] would not negate a finding of guilt" on the lesser-

included offense.  Id. at *23.

## CONCLUSION

The Court should vacate Mr. Lewis's aggravated sentence for brandishing and remand for resentencing consistent with the using or carrying offense charged in the grand jury's indictment and found by the trial jury.

December 23, 2014

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by
    s/ J. Wesley Earnhardt
    J. Wesley Earnhardt
    Michael P. Addis

    Attorneys for Amicus Curiae
    Worldwide Plaza
    825 Eighth Avenue
    New York, NY 10019
    (212) 474-1000

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Federal Rules of Appellate Procedure 29(d) and 32(a)(7).  The brief contains 6,998 words and has been prepared in the Times New Roman 14-point proportionally-spaced typeface.

December 23, 2014                              s/ J. Wesley Earnhardt
                                              J. Wesley Earnhardt

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Third Circuit Local Appellate Rule 46.1(e), I certify that

J. Wesley Earnhardt and Michael P. Addis are members of the Bar of this Court.

December 23, 2014                    s/ J. Wesley Earnhardt
                                     J. Wesley Earnhardt


                                     s/ Michael P. Addis
                                     Michael P. Addis

## CERTIFICATE OF SERVICE

       I certify that on December 23, 2014, a true and correct copy of the

foregoing was served on all parties to this appeal, via CM/ECF, pursuant to Third

Circuit Local Appellate Rule 25.1(b) because counsel for all parties are Filings

Users who will be served electronically by the Notice of Docket Activity.


December 23, 2014                   s/ J. Wesley Earnhardt
                                      J. Wesley Earnhardt